MCCORMACK, J.
This case presents the question whether the Michigan sentencing guidelines violate a defendant’s Sixth Amendment fundamental right to a jury trial. We conclude that the rule from Apprendi v New Jersey, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by Alleyne v United States, 570 US_; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan’s sentencing guidelines and renders them constitutionally deficient. That deficiency is the extent to which the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range, i.e., the “mandatory minimum” sentence under Alleyne.
To remedy the constitutional violation, we sever MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. We also strike down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and *365 compelling reason for that departure.[1]
Consistently with the remedy imposed by the United States Supreme Court in United States v Booker, 543 US 220, 233; 125 S Ct 738; 160 L Ed 2d 621 (2005), we hold that a guidelines minimum sentence range calculated in violation of Apprendi and Alleyne is advisory only and that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness. Booker, 543 US at 264. To preserve as much as possible the legislative intent in enacting the guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence. Id.
In this case the defendant’s guidelines minimum sentence range was irrelevant to the upward departure sentence he ultimately received. Accordingly, we hold that he cannot show the prejudice necessary to establish plain error under People v Carines, 460 Mich 750; 597 NW2d 130 (1999), and we affirm his sentence.[2]
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The defendant was convicted by a jury of involuntary manslaughter for his wife’s death. At sentencing, defense counsel agreed with scoring OV 3 (physical *366 injury to victim)[3] at 25 points and OV 5 (psychological injury to member of victim’s family)[4] at 15 points; counsel did not mention OV 6 (offender’s intent to kill or injure another individual),[5] for which 10 points were assessed. Counsel did challenge the scoring of OV 9 (number of victims)[6] and OV 10 (exploitation of a vulnerable victim),[7] but both only on the ground that the facts of the case did not support the number of points assessed by a preponderance of the evidence. The trial court felt otherwise and kept the score of both variables at 10 points.
With his prior record variable score of 35 points, the defendant’s resulting guidelines minimum sentence range was 43 to 86 months,[8] but the trial court exceeded the guidelines and imposed a minimum sentence of 8 years (96 months) and a maximum sentence of 15 years (180 months, the statutory maximum).[9] As substantial and compelling reasons justifying the departure, the trial court cited that defendant had violated probation orders that forbade him from being where he was when he killed his wife, that he killed his wife in front of their three children as they struggled to stop him from doing so, and that he left the children at home with their mother dead on the floor without concern for their physical or emotional well-being, which were not factors already accounted for in scoring the guidelines. Furthermore, the court said, the extent of the defendant’s prior domestic violence was not considered in the guidelines.
*367 The defendant appealed by right in the Court of Appeals, challenging the scoring of the guidelines and the trial court’s decision to exceed the guidelines minimum sentence range. While this case was pending in the Court of Appeals, the United States Supreme Court decided Alleyne, and defense counsel moved to file a supplemental brief challenging the scoring of the guidelines on Alleyne grounds. The Court of Appeals granted that motion. In a published opinion, the Court of Appeals affirmed the defendant’s sentence and rejected his Alleyne challenge to the scoring of guidelines, adhering to its recent decision in People v Herron, 303 Mich App 392; 845 NW2d 533 (2013), which had rejected that same argument.[10] People v Lockridge, 304 Mich App 278, 284; 849 NW2d 388 (2014) (opinion by O’CONNELL, J.). Judge BECKERING and Judge SHAPIRO filed concurring opinions agreeing with Judge O’CONNELL’S lead opinion that the panel was bound by Herron, but disagreeing with the outcome reached in Herron. If not bound by Herron, Judge BECKERING would have held that requiring judicial fact-finding to set the guidelines mandatory minimum sentence range violated Alleyne. Id. at 285 (opinion by BECKERING, P.J.). She would have made the guidelines advisory to cure the constitutional problem. Id. at 286. Judge SHAPIRO would have held that Alleyne only bars requiring judicial fact-finding to set the bottom of the minimum sentence range, so only the bottom of the range need be made advisory to cure the constitutional flaw. Id. at 311, 315-316 (opinion by Shapiro, J.).
*368 The defendant filed an application for leave to appeal in this Court. We granted leave to appeal to address the significant constitutional question presented.[11] People v Lockridge, 496 Mich 852 (2014).
II. LEGAL BACKGROUND
The Sixth Amendment of the United States Constitution provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation .... [US Const, Am VI.]
The right to a jury trial is a fundamental one, with a long history that dates back to the founding of this country and beyond. Duncan v Louisiana, 391 US 145, 148-154; 88 S Ct 1444; 20 L Ed 2d 491 (1968) (discussing the fundamental nature of the right and its long history).
The question presented in this case relates specifically to whether the procedure involved in setting a mandatory sentence infringes a defendant’s Sixth Amendment right to a jury trial. One key to this inquiry is whether the pertinent facts that must be *369 found are an element of the offense or a mere sentencing factor. See, e.g., Jones v United States, 526 US 227, 232; 119 S Ct 1215; 143 L Ed 2d 311 (1999) (“Much turns on the determination that a fact is an element of an offense rather than a sentencing consideration, given that elements must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt.”). The first United States Supreme Court case warranting specific mention here is McMillan v Pennsylvania, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).
In McMillan, the Supreme Court held that the visible possession of a firearm, which the Pennsylvania statute at issue used as a fact increasing the defendant’s mandatory sentence, did not constitute an element of the crimes enumerated in its mandatory sentencing statute. Rather, it “instead is a sentencing factor that comes into play only after the defendant has been found guilty of one of those crimes beyond a reasonable doubt.” Id. at 86. Accordingly, the McMillan Court rejected the defendant’s argument that Pennsylvania’s mandatory minimum sentencing act was unconstitutional.
Things began to change dramatically with Jones, however. In that case, the Court held that the fact of whether a victim suffered serious bodily injury, which authorized an increase in the defendant’s sentence from 15 to 25 years, was an element of a federal statute prohibiting carjacking or aiding and abetting carjacking that must be found by a jury. Although Jones was decided on statutory rather than constitutional grounds, the Court concluded that treating the fact of bodily injury as a mere sentencing factor “would raise serious constitutional questions.” Jones, 526 US at 251. Justices Stevens and Scalia wrote concurring *370 opinions in Jones that presaged the constitutional rule that would be established a year later in Apprendi. Id. at 252-253 (Stevens, J., concurring); id. at 253 (Scalia, J., concurring).
In Apprendi, the United States Supreme Court announced the general Sixth Amendment principle at issue in this case: “Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi, 530 US at 490 (emphasis added).[12] The Court struck down as unconstitutional a statute that provided for a possible increase in the maximum term of imprisonment from 10 to 20 years if the trial court found, by a preponderance of the evidence, that the defendant “acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.” Id. at 469, quoting NJ Stat Ann 2C:44-3(e). The Supreme Court rejected the lower courts’ conclusions that the statute was constitutional because the finding of intent to intimidate was a mere “sentencing factor” under McMillan. Id. at 492.
In Harris v United States, 536 US 545, 550; 122 S Ct 2406; 153 L Ed 2d 524 (2002), overruled by Alleyne, the Supreme Court was squarely presented with the question “whether McMillan stands after Apprendi.” A majority held that the Apprendi rule did not bar judicially found facts altering “mandatory minimum” sentences. But notably, only a plurality of the Court joined the portion of Justice Kennedy’s opinion that *371 distinguished Apprendi from McMillan. Id. at 556-568. In his concurring opinion, Justice Breyer wrote that he could not “easily distinguish Apprendi. . . from this case in terms of logic,” but he joined the Court’s judgment only because he could not “yet accept [Ap-prendi’s] rule.” Id. at 569-570 (Breyer, J., concurring in part). The dissenting opinion took notice, observing that “[t]his leaves only a minority of the Court embracing the distinction between McMillan and Apprendi that forms the basis of today’s holding . . . .” Id. at 583 (Thomas, J., dissenting).
Next came Blakely v Washington, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004). In that case, the Supreme Court addressed a challenge to the state of Washington’s “determinate” sentencing scheme and observed that “indeterminate sentencing” does not infringe on the power of a jury. Id. at 308. Ultimately, the Blakely Court held the Washington scheme unconstitutional to the extent that it allowed the trial court to impose a sentence greater than the “statutory maximum” sentence authorized by the jury verdict on the basis of the court’s finding that the defendant had acted with “deliberate cruelty.” Id. at 303-304. The Court again emphasized that “the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Id. at 303.
In Booker, the Supreme Court addressed the application of Apprendi to a “determinate” sentencing scheme similar to Washington’s, the federal sentencing guidelines. Two different majorities of the Court held that the guidelines were unconstitutional under Apprendi and Blakely, Booker, 542 US at 226 (opinion by Stevens, J.), and that the proper remedy for the con *372 stitutional infirmity was to make the guidelines advisory rather than mandatory, id. at 245 (opinion by Breyer, J.).
The ripple effects of Apprendi, Blakely, and Booker have been significant in both state and federal courts. See, e.g., Duncan v United States, 552 F3d 442, 445 (CA 6, 2009) (referring to the “Apprendi revolution”). The changes in the law wrought by this new rule led this Court to address whether Michigan’s sentencing guidelines were susceptible to a Sixth Amendment constitutional violation, first in a footnote in People v Claypool, 470 Mich 715, 730 n 14; 684 NW2d 278 (2004), and later at greater length in People v Drohan, 475 Mich 140, 146; 715 NW2d 778 (2006). In both Claypool and Drohan, this Court concluded that the Apprendi/Blakely rule did not apply to Michigan’s sentencing scheme at all. This Court reached this conclusion on the basis of its determination that the Apprendi/Blakely rule was inapplicable to our “indeterminate” scheme. We reasoned in part that “the trial court’s power to impose a sentence is always derived from the jury’s verdict” because the jury’s verdict authorized the “statutory maximum” sentence set by statute. Drohan, 475 Mich at 161-162.
In Alleyne, the Supreme Court overruled Harris and for the first time concluded that mandatory minimum sentences were equally subject to the Apprendi rule, holding that “a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense.” Alleyne, 570 US at_; 133 S Ct at 2160 (emphasis added). Alleyne, like Harris, involved a statute that provided for a mandatory minimum sentence of five years, but that mandatory minimum increased to seven years if it was determined that the defendant had “brandished” a firearm. The Court con- *373 eluded that there was “no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum,” id. at 2163, but noted that its holding did not restrict fact-finding used to guide judicial discretion in selecting a punishment within the limits fixed by law, id. Justice Breyer concurred separately, explaining that while he “continue [d] to disagree with Apprendi,” he nevertheless believed that it was “highly anomalous to read Apprendi as insisting that juries find sentencing facts that permit a judge to impose a higher sentence while not insisting that juries find sentencing facts that require a judge to impose a higher sentence.” Id. at 2166-2167 (Breyer, J., concurring).
III. ANALYSIS
A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo. Drohan, 475 Mich at 146.
The defendant argues that because Alleyne extended the Apprendi rule from statutory maximum sentences to mandatory minimum sentences, Michigan’s sentencing guidelines are no longer immune from that rule. We agree. From Apprendi and its progeny, including Alleyne, we believe the following test provides the proper inquiry for whether a scheme of mandatory minimum sentencing violates the Sixth Amendment: Does that scheme constrain the discretion of the sentencing court by compelling an increase in the mandatory minimum sentence beyond that authorized by the jury’s verdict alone? Michigan’s sentencing guidelines do so to the extent that the floor of the guidelines range compels a trial judge to impose a mandatory minimum sentence beyond that authorized by the jury verdict. Stated differently, to the extent that OVs scored on the *374 basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e., the defendant’s “mandatory minimum” sentence, that procedure violates the Sixth Amendment.
The pertinent language in Alleyne supports this conclusion. “Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant’s ‘expected punishment has increased as a result of the narrowed range’ and ‘the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish.’ ” Alleyne, 570 US at_; 133 S Ct at 2161, quoting Apprendi, 530 US at 522 (Thomas, J., concurring). Similarly, by virtue of the fully scored sentencing guidelines, a judge is required to “impose a higher punishment than he might wish.” Just as the judge’s finding that there was “brandishing” in Alleyne aggravated the penalty in that case by increasing the floor of the range prescribed by law,[13] the OV scoring judges must do as part of our system increases the bottom of the mandatory guidelines range used to set the minimum sentence.
In criticizing the Alleyne majority’s extension of the Apprendi rule, Chief Justice Roberts’s dissenting opinion also had language supporting this conclusion. He wrote:
Under the rule in place until today, a legislature could tell judges that certain facts carried certain weight, and require the judge to devise a sentence based on that weight—so long as the sentence remained within the range authorized by the jury. Now, in the name of the jury right that formed a barrier between the defendant and the State, the majority has erected a barrier between judges *375 and legislatures, establishing that discretionary sentencing is the domain of judges. Legislatures must keep their respectful distance. [Alleyne, 570 US at_; 133 S Ct at 2170-2171 (Roberts, C.J., dissenting) (emphasis added).]
In other words, unrestrained judicial discretion within a broad range is in; legislative constraints on that discretion that increase a sentence (whether minimum or maximum) beyond that authorized by the jury’s verdict are out.
In Herron, the Court of Appeals found no constitutional flaw in our sentencing guidelines, reasoning in part that judicial fact-finding in our guidelines scheme is permissible because it is used only to “inform the trial court’s sentencing discretion within the maximum determined by statute and the jury’s verdict.” Herron, 303 Mich App at 403.[14] We reject this analysis because it ignores two key aspects of the Apprendi rule as extended by Alleyne: (1) the fact-finding is used to constrain, not merely inform, the court’s sentencing discretion by increasing the mandatory minimum sentence and (2) because Alleyne now prohibits increasing the minimum as well as the maximum sentence in this manner, it is insufficient to say that the guidelines scheme is constitutional because the maximum is set by statute and authorized by the jury’s verdict.
Consider this example: a defendant with no prior record who is convicted of kidnapping, MCL 750.349, a Class A offense, MCL 777.16q, which carries a statutory maximum sentence of life in prison. Assume further that no facts necessary to score any of the OVs are admitted by the defendant or necessarily found by *376 the jury as part of the verdict. Under our sentencing guidelines, that defendant would be subject to a minimum sentence of no less than 21 months (the bottom of the applicable guidelines range)[15] and a maximum sentence of life (the statutory maximum).[16] If this were the end of the road and the trial court were free to sentence the defendant anywhere within this range, we would agree that no Sixth Amendment impediment exists.
But there is more. MCL 777.21(1)(a) and MCL 777.22(1) direct courts to score OVs 1 through 4, 7 through 14, 19, and 20 for crimes against a person, a designation that applies to kidnapping, MCL 777.16q. Under this hypothetical situation, a trial court could find facts not found by a jury or admitted by the defendant that could potentially increase the floor of the defendant’s minimum sentence from 21 months to as much as 108 months. MCL 777.62. Those facts are “fact[s] increasing either end of the range” of penalties to which a defendant is exposed, Alleyne, 570 US at_; 133 S Ct at 2160, and therefore the process violates the Sixth Amendment.
The example provided by the Blakely Court of what differentiated a constitutionally permissible “indeterminate” sentencing scheme from an impermissible one, which the Drohan Court quoted and the dissent here also quotes, further illustrates this point:
In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the *377 burglar who enters a home unarmed is entitled to no more than a 10-year sentence—and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury. [Blakely, 542 US at 309.]
Michigan’s sentencing scheme is not like the first example, in which a court has unfettered discretion to impose a sentence within a range authorized by the jury’s verdict. Rather, it is more akin to the latter example. Guidelines scored solely on a defendant’s admissions and prior convictions set a baseline minimum sentence (i.e., 10 years in the Blakely example or 21 months in our hypothetical example), with additional time added by aggravating factors (such as possession or use of a gun, as in the Blakely example): the OVs, which are generally scored on the basis of facts found by the court rather than a jury. The sentencing court’s authority to score the OVs is constrained by law.[17] A defendant’s possible minimum sentence is increased as a result of that scoring, and the court is constrained to impose a minimum sentence in conformity with the applicable guidelines range that is increased by the scoring of those OVs. Thus, Michigan does indeed have a system that punishes an offense with a baseline minimum sentence of no less than X months, with the potential for Y months to be added for the use of a gun, Z months to be added for killing a victim, and so forth. This reality could be ignored when Drohan was decided because the Ap-prendi rule applied only to “statutory máximums” and scoring the sentencing guidelines and establishing the guidelines minimum sentence range does not alter the *378 maximum sentence. But that analysis is no longer sustainable in light of Alleyne’s extension of the Ap-prendi rule to minimum sentences.
In Drohan, this Court analyzed the evolution of the Apprendi rule and concluded that the “statutory maximum” sentence in Michigan for Apprendi/Blakely purposes is generally the maximum sentence set by the statute setting forth the elements of the offense at issue. Drohan, 475 Mich at 164. Accordingly, because at that time the Apprendi rule only applied to maximum sentences, not mínimums, and judicial fact-finding to set the guidelines range only affected minimum sentences, we held that Michigan’s sentencing guidelines scheme did not violate the Sixth Amendment. On this point, Drohan necessarily relied on Harris’s holding that the Apprendi rule did not apply to minimum sentences. Harris, 536 US at 568.
Alleyne changed that. In Alleyne, the United States Supreme Court overruled Harris and held for the first time that the Apprendi rule applied with equal force to minimum sentences. Alleyne, 570 US at_; 133 S Ct at 2155. With minimum sentences now also relevant to the Sixth Amendment analysis, the statutory authority of the court can infringe the constitutional authority of the jury because the guidelines used to set the minimum sentence require a court to increase a defendant’s minimum sentence beyond the minimum sentence authorized by the jury’s verdict alone. To the extent that Drohan asserted that our sentencing scheme is constitutional because the jury verdict always authorizes the maximum sentence provided by law, that analysis is no longer sufficient to complete the constitutional analysis in light of Alleyne-, rather, under Alleyne, the Legislature may not require judicial fact-finding that results in a mandatory increase in *379 either the minimum or maximum sentence beyond the range set by the jury verdict.
Therefore, a straightforward application of the language and holding in Alleyne leads to the conclusion that Michigan’s sentencing guidelines scheme violates the Sixth Amendment. The prosecution and amici curiae do not dispute the holding in Alleyne, but instead advance three arguments in an attempt to sidestep it. First, it is asserted that just as we concluded in Drohan, the Apprendi rule (as now extended by Alleyne) does not apply to Michigan’s sentencing scheme because that scheme is “indeterminate.” Second, Michigan’s sentencing guidelines do not violate the Sixth Amendment because the minimum sentences they set merely establish a parole eligibility date rather than an absolute prison release date and there is no constitutional right to parole. Third, the minimum sentence set by the sentencing guidelines is not a “mandatory minimum” sentence for purposes of Al-leyne. For the reasons that follow, we reject each of these arguments.
A. MICHIGAN’S “INDETERMINATE” SENTENCING SCHEME
The prosecution and the dissent rely primarily on their conclusion that the Apprendi rule does not apply to “indeterminate” sentencing schemes like Michigan’s to dismiss the defendant’s constitutional claim. It is certainly correct that the United States Supreme Court has repeatedly distinguished between “determinate” and “indeterminate” sentencing systems and referred to the latter as not implicating Sixth Amendment concerns and that Alleyne did nothing to alter or undermine that distinction. Because we are bound by the United States Supreme Court’s decisions interpreting the Sixth Amendment such as Apprendi and Al- *380 leyne, however, it is critical to understand exactly what those terms mean in that context rather than in the abstract. And significantly, Michigan’s sentencing scheme is not “indeterminate” as the United States Supreme Court has ever applied that term.[18]
In Blakely, in responding to the dissent, the majority stated, without defining its terms, that “indeterminate” sentencing schemes would not violate the Ap-prendi rule. In quoted language relied on heavily by the prosecution and the dissent in this case, the Court asserted:
By reversing the judgment below, we are not, as the State would have it, “find[ing] determinate sentencing schemes unconstitutional.” This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment. . ..
Justice O’Connor argues that, because determinate-sentencing schemes involving judicial fact-finding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury’s traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial fact-finding, in that a judge (like a parole board) may implicitly rule on those facts he deems *381 important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. [Blakely, 542 US at 308-309 (citations omitted) (emphasis added).]
The Blakely dissent, however, identified states with both indeterminate and determinate (as Drohan understood those terms) sentencing schemes as ones that Blakely cast “constitutional doubt” over because they had “guidelines systems.” Id. at 323 (O’Connor, J., dissenting). Michigan was among the states listed. Id. Legal commentators have also noted that the United States Supreme Court has never referred to Michigan’s sentencing scheme as “indeterminate” for constitutional purposes and that Justice O’Connor’s Blakely dissent suggested the opposite; rather, the Court’s focus in discussing “indeterminate” schemes has been on the absence of mandatory constraints placed on a court’s discretion when sentencing a defendant within a range of possible sentences. See Hall, Mandatory Sentencing Guidelines by Any Other Name: When “Indeterminate Structured Sentencing” Violates Blakely v Washington, 57 Drake L Rev 643, 669 & n 139 (2009) (hereinafter, Mandatory Sentencing Guidelines) (stating that “in Blakely, the Supreme Court understood an indeterminate sentencing regime to be one in which the sentencing judge enjoys ‘unfettered discretion’ within statutory and constitutional limits, and that a mandatory sentencing guidelines system, even when used in conjunction with a parole board, is fundamentally inconsistent with this definition of indeterminate sentencing”) (emphasis added); Ball, Heinous, Atrocious, and Cruel: Apprendi, Indeterminate Sentencing, and the Meaning of Punishment, 109 Colum L Rev 893, 907 (2009) (observing that the United States Supreme *382 Court has used “ ‘indeterminate’ to mean ‘advisory’ and ‘determinate’ to mean ‘binding’ (i.e., determinative of the outcome)”); see also Cunningham v California, 549 US 270, 291-292; 127 S Ct 856; 166 L Ed 2d 856 (2007) (“Merely advisory provisions, recommending but not requiring the selection of particular sentences in response to differing sets of facts . . . would not implicate the Sixth Amendment.”), quoting Booker, 543 US at 233 (quotation marks omitted); Alleyne, 133 S Ct at 2165 (Sotomayor, J., concurring) (observing that the United States Supreme Court has “applied Apprendi to strike down mandatory sentencing systems at the state and federal levels”) (emphasis added).[19] At least one other court has also recognized that the United States Supreme Court has used the term “indeterminate” “imprecisely.” Commonwealth v Yuhasz, 592 Pa 120, 133 n 4; 923 A2d 1111 (2007).[20] And at no time has the *383 Supreme Court specifically defined its use of the term or defined it by reference to Black’s Law Dictionary.
Accordingly, the relevant distinction between constitutionally permissible “indeterminate” sentencing schemes and impermissible “determinate” sentencing schemes, as the United States Supreme Court has used those terms, turns not on whether the sentences produced by them contain one or two numbers;[21] rather, it turns on whether judge-found facts are used to curtail judicial sentencing discretion by compelling an increase in the defendant’s punishment. If so, the system violates the Sixth Amendment. Michigan’s sentencing guidelines do just that.
Because Michigan’s sentencing scheme is not “indeterminate” as that term has been used by the United States Supreme Court, our sentencing guidelines scheme cannot be exempt from the Apprendi and Alleyne rule on that basis. And the escape hatch that Harris provided for Drohan—that Apprendi applied only to maximum sentences and the statutory máxi-mums in Michigan are set by law and therefore never increased based on judge-found facts—has been sealed by Alleyne.
B. NO CONSTITUTIONAL RIGHT TO PAROLE
In a permutation of its “indeterminate” sentencing argument, the dissent also contends that Michigan’s sentencing scheme does not violate Alleyne because a defendant’s minimum sentence merely determines when that defendant is eligible for parole consider *384 ation and there is no constitutional entitlement to parole. This argument was not raised by the prosecution, but was advanced instead by the Attorney General in an amicus curiae brief. We have no quarrel with the general proposition that a defendant has no constitutional entitlement to be paroled, as that proposition is well established by Greenholtz v Inmates of Nebraska Penal & Correctional Complex, 442 US 1, 7; 99 S Ct 2100; 60 L Ed 2d 668 (1979), but we do not see its relevance here. The right at issue includes the Sixth Amendment right to a jury trial, not just the due-process right to be free of deprivation of one’s liberty that was at issue in Greenholtz.[22] And that right includes the right to have a “jury determination” of all the pertinent facts used in increasing the prescribed range of penalties, including both the minimum and the maximum sentences. The violation of that right occurs well before a defendant even begins serving that sentence. Alleyne, 570 US at_; 133 S Ct at 2160 (noting that “a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense” that must be found by a jury). The failure to have the jury find an element establishing “a distinct and aggravated crime,” id. at_; 133 S Ct at 2163, not the resulting sentence, is the constitutional deficiency, id. at_; 133 S Ct at 2162 (observing that “if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant *385 ultimately received a sentence falling within the original sentencing range”) (emphasis added). Accordingly, the assertion that a defendant has no constitutional right to serve less than his or her maximum sentence is entirely correct, but also entirely beside the point. King & Applebaum, Alleyne on the Ground: Factfinding That Limits Eligibility for Probation or Parole Release, 26 Fed Sent Rep 287, 289 (2014) (“The minimum sentence that matters in Alleyne is the floor of the range available to the sentencing judge, the penalty ‘affixed to the crime,’ not the sentence that might actually be served by the offender. That a paroling authority may ultimately decide not to release the defendant when he first becomes eligible is irrelevant.”). Neither the dissent nor the Attorney General cites any other case for the novel proposition that application of the Apprendi rule hinges on whether a defendant is entitled to immediate release upon completion of the sentence at issue or whether the defendant is simply eligible for release or to be paroled.[23]
Finally, it is worth noting that this argument is not supported by other state court decisions applying Alleyne to their sentencing schemes. See, e.g., State v Soto, 299 Kan 102; 322 P3d 334 (2014) (rejecting as unconstitutional under Alleyne a statute that provided for a prison sentence of life with 50 years before the possibility of parole). And at bottom, what this argument ignores is that in Alleyne, the Supreme Court held that like a maximum sentence, a minimum sentence enhanced by judicial fact-finding also implicates *386 the Sixth Amendment jury-trial protection. It is therefore no answer to say that Alleyne is inapplicable here because a defendant has no constitutional right to parole.
C. “MANDATORY MINIMUM” SENTENCES UNDER ALLEYNE
The prosecution and the dissent’s final basis for concluding that Alleyne does not apply to our sentencing guidelines scheme is that the guidelines do not produce “mandatory minimum” sentences for Alleyne purposes. We again disagree.
First, this argument seems to assume that Alleyne applies only to what one might consider traditional mandatory minimums, statutes that provide that upon conviction of an offense, the court “shall sentence the defendant to a term of imprisonment of not less than” x number of years. This fails to account for the broad nature of the Apprendi rule generally that “ ‘facts that increase the prescribed range of penalties to which a criminal defendant is exposed’ ” must be established by proof beyond a reasonable doubt. Apprendi, 530 US at 490, quoting Jones, 526 US at 252-253 (emphasis added). While Alleyne applied this rule to a mandatory minimum sentence, and therefore necessarily spent a great deal of time articulating how the mandatory minimum sentence in that case violated Apprendi, it also reemphasized that the Sixth Amendment applies to facts used to set the range of sentences to which a defendant is exposed. Alleyne, 570 US at_; 133 S Ct at 2160 (“[B]ecause the legally prescribed range is the penalty affixed to the crime, ... it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense.”). Thus, Alleyne cannot be dismissed as inapplicable simply because *387 the statute at issue in that case looks different from our statutory guidelines scheme or because Alleyne only applies to the traditional mandatory minimum sentences mentioned previously. As long as the minimum sentence is “mandatory,” i.e., required by law, Alleyne applies.
More importantly, the core argument that the guidelines do not produce “mandatory” minimum sentences is itself incorrect. The guidelines minimum sentence range is binding on trial courts, absent their articulating substantial and compelling reasons for a departure. The dissent notes that MCL 769.34(4)(a) labels the guidelines ranges as “recommended minimum sentence ranges,” but elsewhere the same statute states that “the minimum sentence imposed by a court of this state . . . shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed.” MCL 769.34(2) (emphasis added). As we have stated many times, “shall” indicates a mandatory directive. Fradco, Inc v Dep’t of Treasury, 495 Mich 104, 114; 845 NW2d 81 (2014). This is precisely the analysis the United States Supreme Court engaged in in Booker, when it invalidated the federal sentencing guidelines because it concluded they were mandatory. Booker, 543 US at 233-234 (“The Guidelines as written, however, are not advisory; they are mandatory and binding on all judges. While subsection (a) of § 3553 of the sentencing statute lists the Sentencing Guidelines as one factor to be considered in imposing a sentence, subsection (b) directs that the court ‘shall impose a sentence of the kind, and within the range’ established by the Guidelines, subject to departures in specific, limited cases.”). Accordingly, Michigan’s guidelines produce sentences that are just as mandatory as those at issue in Alleyne.
*388 But, the dissent asserts, the availability of a sentence departure from the guidelines renders them not truly mandatory. This argument must necessarily reject language from Booker that specifically stated that the availability of a departure “does not avoid the constitutional issue . . . Id. at 234; see also Blakely, 542 US at 305 n 8 (stating that that a judge “cannot make that judgment [that compelling reasons exist to depart from the guidelines] without finding some facts to support it beyond the bare elements of the offense” and that “[w]hether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone does not authorize the sentence”). Much of the dissent’s basis for rejecting the Booker language, however, hinges on its earlier erroneous conclusion that Alleyne does not apply to our “indeterminate” sentencing scheme.[24] To the extent that the dissent’s rejection of this language rests on Drohan, we see nothing in that opinion to indicate that the Drohan Court rejected or even considered this language in reaching its decision. For these reasons, we conclude that Michigan’s sentencing guidelines produce a “mandatory minimum” sentence to which Alleyne applies.[25]
Because the rule from Alleyne applies, the Sixth Amendment does not permit judicial fact-finding to *389 score OVs to increase the floor of the sentencing guidelines range. The right to a jury trial is “a fundamental reservation of power in our constitutional structure,” Blakely, 542 US at 306, and therefore one that cannot be restricted in this manner.
IV. REMEDY
Having concluded that Michigan’s sentencing guidelines violate the Sixth Amendment rule from Apprendi, as extended by Alleyne, we must determine the appropriate remedy for the violation. We consider three options.
First, the defendant asks us to require juries to find the facts used to score all the OVs that are not admitted or stipulated by the defendant or necessarily found by the jury’s verdict. We reject this option. The constitutional violation can be effectively remedied without burdening our judicial system in this manner, which could essentially turn sentencing proceedings into mini-trials. And the United States Supreme Court in Booker expressly rejected this remedy because of the profound disruptive effect it would have in every case. Booker, 543 US at 248 (“It would affect decisions about whether to go to trial. It would affect the content of plea negotiations. It would alter the judge’s role in sentencing.”).[26] We agree.
Second, we consider the remedy suggested in Judge SHAPIRO’s concurring opinion in this case, which would render advisory only the floor of the applicable guide *390 lines range. Lockridge, 304 Mich App at 316 (opinion by SHAPIRO, J.). While we believe that this is a less disruptive remedy that is fairly closely tailored to the constitutional violation, we decline to adopt it because it would require us to significantly rewrite MCL 769.34(2), which provides in part:
Except as otherwise provided in this subsection or for a departure from the appropriate minimum sentence range provided for under subsection (3), the minimum sentence imposed by a court of this state for a felony enumerated in [MCL 777.11 through MCL 777.19] committed on or after January 1, 1999 shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed. [Emphasis added.]
The legislative intent in this provision is plain: the Legislature wanted the applicable guidelines minimum sentence range to be mandatory in all cases (other than those in which a departure was appropriate) at both the top and bottom ends. Opening up only one end of the guidelines range, even if curing the constitutional violation, would be inconsistent with the Legislature’s expressed preference for equal treatment. See Booker, 543 US at 248 (“In today’s context—a highly complex statute, interrelated provisions, and a constitutional requirement that creates fundamental change—we cannot assume that Congress, if faced with the statute’s invalidity in key applications, would have preferred to apply the statute in as many other instances as possible”) (emphasis added). And it would require a significant rewrite of the statutory language to maintain the mandatory nature of the guidelines ceiling but render the guidelines floor advisory only. Accordingly, we decline to limit the remedy for the constitutional infirmity to the floor of the guidelines range.
*391 Third, the prosecution, in turn, asks us to Booker-ize the Michigan sentencing guidelines, i.e., render them advisory only. We agree that this is the most appropriate remedy. First, it is the same remedy adopted by the United States Supreme Court in Booker.[27] Second, it requires the least judicial rewriting of the statute, as we need only substitute the word “may” for “shall” in MCL 769.34(2) and remove the requirement in MCL 769.34(3) that a trial court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure.
Like the Supreme Court in Booker, however, we conclude that although the guidelines can no longer be mandatory, they remain a highly relevant consideration in a trial court’s exercise of sentencing discretion. Thus, we hold that trial courts “must consult those Guidelines and take them into account when sentencing.” Booker, 543 US at 264. Such a system, while “not the system [the legislature] enacted, nonetheless continue^] to move sentencing in [the legislature’s] preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.” Id. at 264-265.
Accordingly, we sever MCL 769.34(2) to the extent that it is mandatory and strike down the requirement of a “substantial and compelling reason” to depart from the guidelines range in MCL 769.34(3). When a defendant’s sentence is calculated using a guidelines minimum sentence range in which OVs have been scored on *392 the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury,[28] the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so. A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. Booker, 543 US at 261. Resentencing will be required when a sentence is determined to be unreasonable. Because sentencing courts will hereafter not be bound by the applicable sentencing guidelines range, this remedy cures the Sixth Amendment flaw in our guidelines scheme by removing the unconstitutional constraint on the court’s discretion. Sentencing courts must, however, continue to consult the applicable guidelines range and take it into account when imposing a sentence. Further, sentencing courts must justify the sentence imposed in order to facilitate appellate review. People v Coles, 417 Mich 523, 549; 339 NW2d 440 (1983), overruled in part on other grounds by People v Milbourn, 435 Mich 630, 644; 461 NW2d 1 (1990).
V. APPLICATION TO THIS DEFENDANT
The defendant did not object to the scoring of the OVs at sentencing on ApprendilAlleyne grounds, so our review is for plain error affecting substantial rights. Carines, 460 Mich at 763, 774.[29] To establish entitle *393 ment to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights. Id. at 763. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Id. Finally, even if a defendant satisfies those three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Id. Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant’s innocence. Id. at 763-764.
The defendant received a total of 70 OV points and had 35 points assessed for prior record variables, placing him in the D-V cell of the sentencing grid for Class C offenses. MCL 777.64. That cell calls for a minimum sentence of 43 to 86 months. The defendant concedes that the jury verdict necessarily established the factual basis to assess 25 points for OV 3 and 10 points for OV 6. Assuming arguendo that the facts necessary to score OV 5 at 15 points and OV 9 and OV 10 at 10 points each were not established by the jury’s verdict or admitted by the defendant, and yet those facts were used to increase the defendant’s mandatory minimum sentence, violating the Sixth Amendment,[30] *394 the defendant nevertheless is not entitled to resentenc-ing. Because he received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines (and indeed, the trial court necessarily had to state on the record its reasons for departing from that range), the defendant cannot show prejudice from any error in scoring the OVs in violation of Alleyne. See note 31 of this opinion.
VI. APPLICATION TO OTHER DEFENDANTS
Although we have held that the defendant in this case cannot satisfy the plain-error standard, we nevertheless must clarify how that standard is to be applied in the many cases that have been held in abeyance for this one. This analysis is particularly important because, given the recent origin of Alleyne, virtually all of those cases involve challenges that were not preserved in the trial court.
First, we consider cases in which (1) facts admitted by the defendant and (2) facts found by the jury were sufficient to assess the minimum number of OV points necessary for the defendant’s score to fall in the cell of the sentencing grid under which he or she was sentenced. In those cases, because the defendant suffered *395 no prejudice from any error, there is no plain error and no further inquiry is required.
Second, we consider the converse: cases in which facts admitted by a defendant or found by the jury verdict were insufficient to assess the minimum number of OV points necessary for the defendant’s score to fall in the cell of the sentencing grid under which he or she was sentenced. In those cases, it is clear from our previous analysis that an unconstitutional constraint actually impaired the defendant’s Sixth Amendment right. The question then turns to which of these defendants is entitled to relief, i.e., which can show plain error.
We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure[31] can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from United States v Crosby, 397 F3d 103, 117-118 (CA 2, 2005):
Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and *396 requiring a new sentencing. However, the choice is not so limited. . .. Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we conclude that the “further sentencing proceedings” generally appropriate for pre-jBooker / Fanfan[32] sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence. . ..
A remand for determination of whether to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence,... an appellate court will normally be unable to assess the significance of any error that might have been made....
Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post-Booker/Fanfan regime the sentence would have been essentially the same as originally imposed. Conversely, a district judge’s decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.
In short, a sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different. [Some emphasis added.][33]
*397 Thus, in accordance with this analysis, in cases in which a defendant’s minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing. Id. at 118.
A few comments on the proper procedures for trial courts to follow on so-called Crosby remands are in order to ensure consistency and stability. First, consistently with Crosby, we hold that Crosby remands are warranted only in cases involving sentences imposed on or before July 29, 2015, the date of today’s decision. Accordingly, for defendants sentenced after our decision today, the traditional plain-error review from Carines will apply. See id. at 116 (“In cases involving review of sentences imposed after the date of Booker/Fanfan, we would expect to apply these prudential doctrines [including plain-error review] in the customary manner.”).
*398 Second, we conclude that a trial court considering a case on a Crosby remand should first and foremost “include an opportunity for a defendant to avoid resen-tencing by promptly notifying the [trial] judge that resentencing will not be sought.” Id. at 118. If the defendant does not so notify the court, it “should obtain the views of counsel, at least in writing, but ‘need not’ require the presence of the Defendant,” in “reaching its decision (with or without a hearing) whether to resentence.” Id. at 120. Upon making that decision, the trial court shall “either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resen-tence in conformity with” this opinion. Id.
Stated differently, on a Crosby remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law,[34] if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the “circumstances existing at the time of the original sentence.” Id. at 117; see also United States v Ferrell, 485 F3d 687, 688 (CA 2, 2007) (holding that the trial court’s failure to consider the circumstances as they existed at the time of the resentencing hearing, including evidence of the defendant’s post- *399 judgment prison rehabilitation, did not violate the defendant’s due process rights).
VII. CONCLUSION
Because Michigan’s sentencing guidelines scheme allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives, it violates the Sixth Amendment to the United States Constitution under Alleyne. We therefore reverse the judgment below and overrule the Court of Appeals’ decision in Herron. To remedy the constitutional flaw in the guidelines, we hold that they are advisory only.
To make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant’s OV score to account for the error would change the applicable guidelines minimum sentence range. If a defendant makes that threshold showing and was not sentenced to an upward departure sentence, he or she is entitled to a remand to the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion. If the trial court determines that it would not have imposed the same sentence but for the constraint, it must resentence the defendant.
We reverse the judgment of the Court of Appeals in part and affirm the defendant’s sentence.
YOUNG, C.J., and KELLY, VIVIANO, and BERNSTEIN, JJ., concurred with MCCORMACK, J.

 To the extent that any part of MCL 769.34 or another statute refers to use of the sentencing guidelines as mandatory or refers to departures from the guidelines, that part or statute is also severed or struck down as necessary.

 Our order granting leave to appeal did not limit our consideration of the issues presented to the Alleyne question. People v Lockridge, 496 Mich 852 (2014). With respect to the defendant’s other argument that the trial court did not present sufficient substantial and compelling reasons to depart from the sentencing guidelines, we agree with the Court of Appeals that the reasons articulated by the trial court adequately justified the minimal (10-month) departure above the top of the guidelines minimum sentence range.

 MCL 777.33(l)(c).

 MCL 777.35(l)(a).

 MCL 777.36(l)(c).

 MCL 777.39(l)(c).

 MCL 777.40(l)(b).

 MCL 777.16p; MCL 777.64.

 MCL 750.321.

 The defendant in Herron subsequently filed an application for leave to appeal in this Court, and that application is being held in abeyance pending the outcome of this case. People v Herron, 846 NW2d 924 (Mich, 2014).

 Our grant order specifically directed the parties to address
(1) whether a judge’s determination of the appropriate sentencing guidelines range, MCL 777.1, et seq., establishes a “mandatory minimum sentence,” such that the facts used to score the offense variables must be admitted by the defendant or established beyond a reasonable doubt to the trier of fact, Alleyne v United States, 570 US_; 133 S Ct 2151; 186 L Ed 2d 314 (2013); and (2) whether the fact that a judge may depart downward from the sentencing guidelines range for “substantial and compelling” reasons, MCL 769.34(3), prevents the sentencing guidelines from being a “mandatory minimum” under Alleyne, see United States v Booker, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005).

 The Court had previously recognized an “exceptional departure” from this historical practice in Almendarez-Torres v United States, 523 US 224; 118 S Ct 1219; 140 L Ed 2d 350 (1998), for the existence of a prior conviction. Apprendi, 530 US at 487-488.

 Alleyne, 570 US at_; 133 S Ct at 2160, 2163.

 To the extent that the Herron panel’s analysis rested on its determination that the sentencing guidelines do not establish a “mandatory minimum” sentence, we reject it for the reasons discussed in Part III(C) of this opinion.

 MCL 777.62. Because the top of the guidelines range does not implicate the Sixth Amendment, it is not relevant to this hypothetical and we therefore do not discuss it.

 MCL 750.349.

 See, e.g., MCL 777.31(1) (directing that the OV be scored by “determining which of the following [circumstances] apply and by assigning the number of points attributable to the one that has the highest number of points”); People v Houston, 473 Mich 399, 407; 702 NW2d 530 (2005).

 In Drohan, we cited the definition of “indeterminate sentence” from Black’s Law Dictionary (8th ed): a sentence “of an unspecified duration, such as one for a term of 10 to 20 years.” Drohan, 475 Mich at 153 n 10. Drohan was correct to say that Michigan has an indeterminate sentencing scheme under that definition of the term.

 The United States Supreme Court cases that refer to “indeterminate sentencing” and then immediately stress the exercise of vast judicial discretion within broad sentencing ranges as the centerpiece of such a system are too numerous to cite here. For but a few additional examples, see Almendarez-Torres, 523 US at 245-246 (discussing how judges “have typically exercised their discretion within broad statutory ranges” and then citing a source discussing the “history of indeterminate sentencing”); Mistretta v United States, 488 US 361, 363; 109 S Ct 647; 102 L Ed 2d 714 (1989) (discussing the federal government’s longstanding practice of indeterminate sentencing as one in which “[statutes specified the penalties for crimes but nearly always gave the sentencing judge wide discretion to decide whether the offender should be incarcerated and for how long”); Jones, 526 US at 271 (Kennedy, J., dissenting) (contrasting “a system of indeterminate sentencing or a grant of vast discretion to the trial judge” and “a regime in which there are more uniform penalties, prescribed by the legislature”) (emphasis added). Tb the extent that the dissent criticizes our analysis on this point as “entirely speculative,” and unsupported by binding authority, it simply ignores this footnote and cases cited in the accompanying text.

 Crucially, the Yuhasz Court cited this imprecision as a reason to hold that the fact that its guidelines scheme is advisory, not its indeterminate nature, made the scheme constitutionally sound.

 Indeed, to reach that conclusion would be to ignore Alleyne’s clear acknowledgment that there could be two constitutionally significant sentences: a mandatory minimum and a statutory maximum. That only one number might exist in a given case seems of little relevance to the analysis.

 We do not dispute the dissent’s correct contention that Apprendi and Alleyne stated that they implicate both the Sixth Amendment right to a jury trial and the Fourteenth Amendment right to due process. Post at 438 n 25. But it is for the very reason that both of these rights are implicated that Greenholtz and other cases involving only the latter necessarily cannot answer the question before us. Rather, it is Apprendi and Alleyne, cases that implicate both rights, that are “highly relevant to the analysis.”

 The dissent briefly cites Wolff v McDonnell, 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974), and Morrissey v Brewer, 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972), but both of those cases involve a criminal defendant’s rights in parole proceedings. Thus, they are as inapposite here as Greenholtz.

 See post at 444 (“[AJnything the Supreme Court has said about upward departures in a determinate system cannot reflexively be applied to an indeterminate system.”).

 The dissent implies that 11 federal courts of appeal have rendered decisions to the contrary. We do not agree. First, to be clear, none of those courts has rendered a decision on whether Michigan’s sentencing guidelines produce “mandatory minimum” sentences. Second, to the extent that those courts have held that “judicial fact-finding does not implicate Alleyne if there is no ‘mandatory minimum’ sentence involved,” post at 446, we agree with them. But to say that those decisions support the dissent’s analysis simply begs the question: Do Michigan’s sentencing guidelines produce a “mandatory minimum” sentence?

 In asserting that in Alleyne the “narrow” remedy imposed was “that facts increasing the minimum sentence must be submitted to the jury” and suggesting that we adopt that remedy, the dissent is effectively proposing that we should do just this. For the reasons given, we do not see this remedy as “narrow” given its potential for disruptive effects, which the dissent does not acknowledge.

 Thus, to the extent that the Constitution requires a certain degree of precision to remedy the constitutional violation, adopting the Booker remedy most carefully ensures that we remain faithful to its dictates. Accordingly, while it is unfortunate that the dissent finds the reasons for our adoption of this remedy unpersuasive, for this and our other reasons stated we believe it to be the most prudent course under the circumstances.

 Our holding today does nothing to undercut the requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not. See MCL 777.21(l)(a) (directing that the offense variables applicable to the offense category at issue be scored); see also, e.g., MCL 777.31(1) (directing that the “highest number of points” possible be scored); MCL 777.32(1) (same); etc.

 The United States Supreme Court has applied plain-error review to unpreserved Apprendi errors. See United States v Cotton, 535 US 625; *393 122 S Ct 1781; 152 L Ed 2d 860 (2002). It has also held that Apprendi errors are not structural errors, Washington v Recuenco, 548 US 212; 126 S Ct 2546; 165 L Ed 2d 466 (2006), so to the extent that “our caselaw suggests that a plain structural error satisfies the third Cannes prong,” People v Vaughn, 491 Mich 642, 666; 821 NW2d 288 (2012), it is not implicated here.

 For the reasons explained in Part III(B) of this opinion, the right at issue is a procedural one, i.e., the right to have a “jury determination” of all the pertinent facts used in increasing the prescribed range of penalties, including both the minimum and the maximum sentence. *394 Thus, a constitutional error occurs regardless of whether the error has a substantive effect on the defendant’s sentence. Alleyne makes this plain. Alleyne, 570 US at_; 133 S Ct at 2162-2163 (“[Ufa judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range (i.e., the range applicable without that aggravating fact). . . . The essential point is that the aggravating fact produced a higher range .... [T]here is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum.”) (emphasis added).
Thus, whether that error actually increases the floor of a defendant’s minimum sentence range under the guidelines is only relevant to the question of whether the defendant has suffered any prejudice.

 In cases such as this one that involve a minimum sentence that is an upward departure, a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a harsher sentence than allowed by the guidelines and expressed its reasons for doing so on the record. It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory. Thus, we conclude that as a matter of law, a defendant receiving a sentence that is an upward departure cannot show prejudice and therefore cannot establish plain error.

 Panfan was one of the respondents in Booker.

 The United States Court of Appeals for the Ninth Circuit has also adopted the Crosby remand procedure. See United States v Ameline, 409 F3d 1073 (CA 9, 2005). Further, the United States Court of Appeals for the Seventh Circuit and the United States Court of Appeals for the *397 District of Columbia have adopted a similar remand procedure, although modifying it so that “the appellate court retains jurisdiction throughout the limited remand, and thus it is the appellate court that will ‘vacate the sentence upon being notified by the judge that he would not have imposed it had he known that the guidelines were merely advisory.’ ” United States v Coles, 365 US App DC 280, 286; 403 F3d 764 (2005), quoting United States v Paladino, 401 F3d 471, 484 (CA 7, 2005). Other circuits have taken different approaches, creating a circuit split on the issue that more resembles a chasm. See, e.g., Nall, United States v Booker: The Presumption of Prejudice in Plain Error Review, 81 Chi-Kent L Rev 621, 635 (2006) (noting that “[e]ach of the twelve circuits has taken a slightly different tack in dealing with direct review of Booker error .. ..”). But as of yet, despite multiple petitions for certio-rari asking it to address the issue, the United States Supreme Court has declined to clarify the proper approach. See, e.g., Rodriguez v United States, 545 US 1127; 125 S Ct 2935; 162 L Ed 2d 866 (2005).

 MCR 6.425.