# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RASHON COLEMAN,

Defendant-Appellant.

UNPUBLISHED
November 21, 2017

No. 333728
Wayne Circuit Court
LC No. 15-005843-01-FC

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault by strangulation, MCL 750.84(1)(b), and assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a). He was sentenced to concurrent prison terms of 3 to 10 years, which was an upward departure from the recommended sentencing range of 10 to 23 months' imprisonment. We affirm.

Defendant's convictions arise from his physical attack on his mother (the victim) which occurred after she refused to give him money. First defendant went into her bedroom and began punching holes in the bedroom door. Because defendant had tried to choke her in the past, the victim was afraid of defendant so she grabbed a hammer and called the police, her own mother, and her sister. When her mother's car pulled into the driveway, defendant then grabbed the victim, wrapped his arms around her neck, and pinned her against the wall. He squeezed her neck so hard that she had trouble breathing. Although defendant was initially pulled off of the victim, he came back at her again and continued to squeeze her neck "very hard." The victim's mother testified that when she walked into the house, defendant was strangling her daughter who was begging for help while defendant kept saying "I'mo kill you, B****."

After the victim eventually fell to the floor, defendant picked her up, slammed her to the floor, and punched and kicked her face, side, and stomach. At one point, the victim testified, defendant and she were on the floor and she bit his leg as he wrapped his legs around her neck. She also recalled that defendant picked her up and slammed her to the floor a second time. He then began choking her again, saying, "[Y]ou think you supposed to be a bad B****." The victim testified that, at some point, defendant got up, walked over to a table, and picked up a kitchen knife. The victim's mother had heard defendant say, "I'm going to get a knife. I'mo kill you B****." With the help of her sister, the victim was able to stand up and run outside to the

-1-

vehicle of an unknown motorist the victim's sister had flagged down. Defendant pursued them outside and grabbed the victim's shirt in an attempt to pull her out of the vehicle. At that point, the vehicle pulled off and the victim was able to escape from defendant. The police officer who eventually investigated this matter testified that the victim appeared to have been assaulted and was taken by ambulance to the hospital for treatment.

Defendant testified that the assault began after the victim hit him in the head with a hammer. According to defendant, he did not grab a knife during the assault, did not try to stab the victim with the knife, and did not follow her out to the car.

On appeal, defendant argues that the trial court erred in scoring offenses variable (OV) 1 (aggravated use of a weapon) and OV 2 (lethal potential of the weapon used). We disagree.

While the sentencing guidelines are now advisory, our Supreme Court has held that the trial court must nonetheless score them. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The trial court must assess the highest number of points for all offense variables. *Id*. at 392 n 28. This Court reviews the trial court's assessments for clear error.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).]

Generally, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The trial court assessed OV 1 at 15 points. OV 1 is to be assessed at 15 points if "the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon[.]" MCL 777.31(1)(c). The victim testified that during the assault, defendant picked up a kitchen knife and advanced toward her while holding the knife in front of him "with the blade sticking out[.]" The victim ran. When asked why she ran out of the door, the victim responded, "Because [defendant] was coming after me with a knife, and I was scared." The victim further testified that even after she ran outside and tried to get into the vehicle, defendant followed her outside, grabbed her shirt, and tried to pull her out of the vehicle. And the victim's mother had heard defendant say, "I'm going to get a knife. I I'mo kill you B****." Although defendant's testimony disagreed with the victim's, the trial court chose not to believe defendant's version of events. See *Kanaan*, 278 Mich App at 619. The trial court did not clearly err when it assessed 15 points for OV 1.

Further, the trial court did not err in assessing 5 points for OV 2. OV 2 is to be assessed at 5 points where "[t]he offender possessed or used a . . . knife or other cutting or stabbing weapon[.]" MCL 777.32(1)(d). Given the evidence that defendant picked up a knife during the assault and approached the victim with it, a preponderance of the evidence supported the trial court's assessment of 5 points for this offense variable.

And we reject defendant's argument that neither OV 1 nor OV 2 should have been scored because the knife appeared after the sentencing offenses were completed. The victim testified that defendant picked up a knife during the assault and approached her with it. She ran outside because defendant was coming after her with a knife and she was scared. Even after she ran outside, defendant followed her, grabbed her shirt, and tried to pull her out of the vehicle. Contrary to defendant's argument, he had the knife during the ongoing offense of assault with intent to do great bodily harm less than murder. Therefore the trial court did not err by scoring OV 1 and OV 2. Moreover, defendant's ineffective assistance claim premised on his counsel's failure to object to the scoring of OV 1 and OV 2 is without merit because counsel is not required to raise futile objections. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Defendant also argues that the trial court abused its discretion when it exceeded the sentencing guidelines. We disagree.

This Court reviews a trial court's imposition of an upward departure sentence for an abuse of discretion. *People v Steanhouse*, ___ Mich ___ ; 902 NW2d 327 (2017) (Docket Nos. 152671, 152849, 152871, 152872, 152873, 152946, 152947, and 152948); slip op at 4. "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). In other words, the nature of the offense and the background of the offender must be considered. *Id*. at 651. In *Steanhouse*, this Court identified the following nonexclusive factors as relevant in determining whether a sentence was proportionate:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (internal citations omitted), rev'd in part on other grounds by *Steanhouse* ___ Mich ___ (2017).]

Here, the trial court stated several reasons for its 13-month upward departure from the guidelines range. It considered that defendant's conduct "demonstrate[d] a very significant issue of dangerousness for which the community has to be protected." This consideration was appropriate given the extent of the beating the victim—his own mother—received from defendant for failing to give him money. And the trial court considered the family relationship between the victim and defendant, which the guidelines did not take into account. Indeed, defendant repeatedly strangled and hit his mother over a trivial issue. If not for the timely intervention of the victim's mother and sister, the victim likely would have sustained more serious injuries or been killed.

Further, after the incident occurred, defendant tried to hang himself and later fled to Texas, where he was apprehended. The trial court properly found that these actions by defendant showed a consciousness of guilt. And defendant did not express remorse for his actions during

sentencing. Moreover, with regard to defendant's potential for rehabilitation, the trial court noted that defendant had a history of mental disorder that had caused him to "come in contact with the criminal justice system on a misdemeanor level on a number of occasions," as was illustrated in his presentence investigation report. The trial court was also concerned that the victim needed to be protected from defendant. Arguably, the fact that the assault was on his mother shows an escalation of defendant's criminal behavior, considering the reason for, and nature of, the assault.

In summary, the departure sentence imposed by the trial court did not violate the principle of proportionality and did not constitute an abuse of discretion. See *Milbourn*, 435 Mich at 636.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-4-