# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSHUA ROBERT WITKOWSKI,

Defendant-Appellant.

UNPUBLISHED
October 12, 2017

No. 333675
Manistee Circuit Court
LC No. 13-004306-FC

Before: TALBOT, C.J., and O'CONNELL and O'BRIEN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of one count of second-degree child abuse, MCL 750.136b(3). The trial court sentenced defendant to 71 months to 10 years' imprisonment. Defendant appealed, and this Court affirmed his conviction but remanded for resentencing.[1] Upon resentencing, the trial court again sentenced defendant to serve 71 months to 10 years' imprisonment. Defendant appeals as of right. For the reasons discussed below, we affirm.

We summarized the relevant factual details of defendant's crime in our prior opinion:

Defendant shared a home in Manistee with the victim's mother, A.S., and her three children, including the victim, E.S. E.S. was two and a half years old at the time of the abuse. A.S. testified that on the morning of December 17, 2012, E.S. appeared to be healthy and feeling well. A.S. had left E.S. with defendant when she walked her two older children to the school bus stop, and testified that E.S. was crying when she returned home. However, A.S. said that this was not abnormal behavior for E.S. because she preferred to be with her mother at all times.

A.S. testified that after she returned home, she, defendant, and E.S. ran several errands together. A.S. said E.S. "ran to the van" and helped "buckle her

---

[1] *People v Witkowski*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 2016 (Docket No. 323706).

car seat and she was fine." Defendant made stops at the bank where A.S. and E.S. waited for him in the van and were dancing to music, and then went to the local courthouse where A.S. and E.S. again stayed in the van while defendant ran inside. Next, they went to the local office of the Department of Human Services (DHS), where A.S. realized she had forgotten paperwork that she needed for her DHS appointment. A.S. sent defendant home to get the documents, along with E.S. A.S. estimated that defendant was gone for 35-45 minutes. When defendant returned, he met A.S. in the lobby of the DHS office to give her the documents, leaving E.S. alone in the vehicle. Defendant testified that he was in the DHS office and away from E.S. for about two to three minutes while meeting with A.S, before returning to the van and remaining there for the duration of A.S.'s appointment. According to A.S., when she left the DHS office following her appointment, she saw defendant crouched over E.S. in the back of the van, covering her up with a blanket. A.S. asked defendant about E.S., and he told her that E.S. was tired and had fallen asleep.

A.S. testified that their next destination was a business in Ludington where defendant had planned to submit a job application. During the drive to Ludington, A.S. felt E.S. kicking the back of her seat, but did not think her behavior was significant. When they arrived in Ludington, defendant went inside alone to fill out the application while A.S. and E.S. waited for him in the van. While they were waiting for defendant, A.S. felt the kicking intensify and called to E.S., but she did not respond. A.S. took E.S. out of her car seat and attempted to wake her, but was unable to do so. When defendant returned to the van, A.S. told him that something was wrong with the child and that they should take her to a hospital, but defendant told her that E.S. was just tired, and that they should let her sleep.

A.S. testified that on the drive back to Manistee from Ludington, she continued to watch E.S., and noticed that she was moving her arms sporadically and raising them above her head. A.S. told defendant again that they needed to take the child to the hospital, but defendant told her to "quit worrying" and that she was acting "crazy." When they arrived at their residence in Manistee, A.S. took E.S. out of her car seat and felt that E.S.'s skin was "burning hot." A.S. continued to try to wake E.S. and took her temperature, which was over 100 degrees. A.S. testified that she became "hysterical" and directed defendant to call 911, which he did.

Emergency medical personnel transported E.S. to West Shore Hospital and later to Helen DeVos Children's Hospital where E.S.'s treating physicians observed that E.S. was continually seizing. They diagnosed her with a subdural hematoma, retinal hemorrhages, bruising of her brain tissue, and multiple external bruises on her face, abdomen, arms, and back. E.S.'s treating physicians diagnosed the cause of her injuries as pediatric physical abuse, based on the lack of history of accidental trauma or underlying medical causes that could explain her injuries. Defendant was charged with one count of first-degree child abuse, MCL 750.136b(2), but was found guilty of the lesser-included offense of second-

degree child abuse, MCL 750.136b(3). [*People v Witkowski*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 2016 (Docket No. 323706), pp 1-2.]

The trial court initially sentenced defendant to 71 months to 10 years' imprisonment. Defendant's minimum sentence was at the top of the sentencing guidelines range of 36 to 71 months and was based in part on the trial court's assessment of 15 points for offense variable (OV) 19 (interference with the administration of justice or rendering of emergency services). This Court affirmed defendant's conviction but remanded with instructions to resentence defendant and assess zero points for OV 19, which would lower defendant's guidelines range to 29 to 57 months. *Witkowski*, unpub op at 9. At resentencing, the trial court again sentenced defendant to 71 months to 10 years' imprisonment.

In the instant appeal, defendant argues that the trial court's upward departure from the recommended sentencing guidelines range was unreasonable and disproportionate.[2] Specifically, defendant claims that he is entitled to resentencing because the trial court "relied upon factors already accounted for in the [recommended] sentencing guidelines to justify this upward departure." We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, ___ Mich ___, ___; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871-152873, 152946-152948), slip op at 14. In *Steanhouse*, the Michigan Supreme Court clarified that "the relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its discretion by violating the principle of proportionality[.]" *Id*. at ___, slip op at 14-15. Under this principle, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines recommended range.' " *Id*. at ___, slip op at 15, quoting *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). The factors that a trial court may consider under the proportionality standard include:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the

---

[2] We must note that defendant's arguments are deficient because they challenge the trial court's reasons for departing from the guidelines without addressing why the actual 71-month minimum sentence is unreasonable or disproportionate. Under *Lockridge*, courts are no longer required to articulate substantial and compelling reasons to depart from the sentencing guidelines; rather, the sentence imposed is reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In this case, defendant never advances any argument explaining why his minimum sentence is itself unreasonable or disproportionate to his offense and the circumstances surrounding it. Instead, defendant alleges that the court lacked adequate reasons to depart from the sentencing guidelines. In any event, defendant's arguments fail because the reasons the court departed are proper considerations under the current standard.

relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), rev'd in part on other grounds by *Steanhouse* ___ Mich ___ (2017), (citations omitted).]

In this case, the trial court justified the proportionality of its sentence by stating that it did not believe the guidelines sufficiently took into account the damage done to E.S, which is a proper justification for a departure sentence. See *Milbourn*, 435 Mich at 657 (stating that factors inadequately considered by the guidelines are an appropriate reason to depart from the sentencing guidelines). Defendant argues that the trial court did not take into account that it assessed 25 points for OV 3 (physical injury to victim), which is appropriate where a "life threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). While the court did not specifically mention OV 3, its determination that the guidelines did not *sufficiently* take into account the victim's injuries acknowledges that the guidelines do, in fact, account for the physical injuries to the victim but nevertheless did not adequately reflect the extent of the injuries in this instance. Indeed, as noted above, E.S.'s injuries were grave. At resentencing, the trial court heard from E.S.'s father, who stated that E.S., less than a month from her sixth birthday, had "the mentality of a two-year-old" and the "physical capabilities of a one-year-old" child. He also indicated that she required daily medication to regulate her blood pressure and keep her alive and that she could not function independently and required assistance to make bowel movements. Further, he asserted that he could no longer hold a job because he regularly needed to take E.S. to the hospital for "weeks, months on end" when she would start vomiting and be unable stop. He further stated that E.S. would be under his care for the rest of her life and that she would likely never be able to marry, date, or hold a job. OV 3 accounts for a "permanent incapacitating injury" inflicted upon a victim, MCL 777.33(1)(c), but the trial court did not err by recognizing that E.S.'s physical injuries were not only physically incapacitating but also impaired her mental development and ability to live a normal life.[3]

---

[3] Defendant also argues that the trial court cannot use his criminal history to depart from the guidelines because criminal history is addressed by prior record variables (PRVs). However, it is not clear from our review of the record that the trial court actually used defendant's criminal history as a basis for departure. In any event, defendant was assessed five points for PRV 5 and all other PRVs were assessed zero points. A score of five points under PRV 5 is appropriate if the defendant has "2 prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1)(d). The SIR indicated that defendant had four misdemeanors but only two were scored; one occurred after the commission of the instant offense. At resentencing, the trial court listed seven crimes defendant committed other than the instant offense. Thus, defendant had a history of criminal activity not accounted for in the guidelines. Nevertheless, the victim's severe injuries were enough to justify a departure from the sentencing guidelines. See *People v Anderson*, 298 Mich App 178, 188; 825 NW2d 678 (2012), lv den 493 Mich 955 (2013) (concluding that the trial court sufficiently justified its departure sentence by finding that the severity of the victims' prolonged pain as a result of their severe burn injuries was not adequately taken into account by OV 3).

Accordingly, we conclude that the trial court did not abuse its discretion and that the sentence imposed was "proportionate to the seriousness of the circumstances of the offense and the offender." *Milbourn*, 435 Mich at 636.

Affirmed.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Colleen A. O'Brien