*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES LEE WALLER,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2019

No. 339711
Barry Circuit Court
LC No. 2017-000192-FC

Before: METER, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant, James Lee Waller, appeals as of right from his convictions of four counts of first-degree criminal sexual conduct. MCL 750.520b(1). We affirm.

## I. BACKGROUND

This case concerns defendant's repeated sexual abuse of his biological nieces, BD and TD. The victims are twins and have cognitive impairments. They began living with defendant in his home when they were 13 years old. The home had only one bedroom, which the victims shared with defendant.

BD testified that defendant began sexually abusing her when she was 14 years old. According to BD, defendant told her that he would give her money to touch his penis or perform oral sex. DB stated that defendant would offer to give her a backrub, but would touch BD's breasts, buttocks, and genitalia both over and under her clothes. According to BD, these incidents occurred two or three times per week—or whenever defendant was intoxicated—until she turned 17 years old. BD also testified that defendant performed cunnilingus on her, put his finger inside her vagina, initiated penile-vaginal sex with her on multiple occasions, and initiated penile-anal sex with her on four or five occasions. Finally, BD testified that she observed defendant sexually abusing TD.

For her part, TD testified that defendant began sexually abusing her when she was 13 years old. Defendant made her get on top of him, and he initiated penile-vaginal sex with her while he touched and spread her buttocks. According to TD, defendant also touched her breasts,

buttocks, and genitalia and penetrated her vagina with his finger under the pretense of a backrub. TD testified that defendant would abuse her "[m]aybe twice a week" until she turned 17 years old. The prosecutor also presented testimony at trial that defendant made the victims watch pornographic videos with him.

The victims each testified that defendant told them that they would lose social privileges—such as going to youth group, having friends over, or visiting with their neighbors—if they did not engage in sexual acts with him. BD testified that defendant told her that he would go to jail if she did not participate in the sexual acts and that she did not love him if she did not comply. She testified that defendant also implied that she would have to leave his home if she did not comply. TD testified that she did not initially disclose the abuse because she felt scared that something bad would happen to her and her sister.

When the victims were 17 years old, however, they moved into their neighbors' home and disclosed the abuse.[1] Ultimately, a jury found defendant guilty of four counts of first-degree criminal sexual conduct (CSC-1), MCL 750.520b(1), seven counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1); one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d); and two counts of soliciting a child for an immoral purpose, MCL 750.145a. Defendant's sentencing-guidelines range recommended a minimum prison sentence between 135 and 225 months for his CSC-I convictions. See MCL 777.62. The trial court departed upward from the sentencing guidelines, imposing concurrent prison terms of 480 to 720 months for each of defendant's CSC-I convictions. The trial court sentenced defendant to concurrent prison terms of 120 to 180 months for each CSC-II and CSC-III conviction and 18 to 48 months for each soliciting conviction. On appeal, defendant challenges only his sentence for the CSC-I convictions.

## II. ANALYSIS

Defendant argues that the trial court abused its discretion and violated the principle of proportionality when it departed upward from the sentencing-guidelines range. We review for reasonableness the trial court's upward departure from the sentencing guidelines. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017). A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

A sentence is reasonable when it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 471. See also *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990). The purpose of the proportionality requirement is to combat unjustified disparity in sentencing, thereby ensuring that "similar offense and offender characteristics receive substantially similar sentences." *People v Dixon-*

---

[1] Shortly after the victims moved in with their neighbors, the neighbors obtained a guardianship over them. Eventually, the neighbors adopted the victims.

*Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017) (internal citation and quotation marks omitted). Under our system of sentencing, this principle of proportionality is first entrusted to the Legislature, which is tasked with "grading the seriousness and harmfulness of a given crime and given offender within the legislatively authorized range of punishments." *Id*. at 524 (internal citation and quotation marks omitted). Although the Legislature's guidelines are advisory, they remain a highly relevant consideration in a trial court's exercise of its sentencing discretion. *Steanhouse*, 500 Mich at 469-470, 474-475. Indeed, a sentence within the Legislature's guidelines range is presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Thus, when sentencing an individual defendant, the trial court must first score the sentencing guidelines and take them into account. *Lockridge*, 498 Mich at 391. If the trial court chooses to depart from the sentencing guidelines, it must justify the departure on the record by explaining "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich App at 525 (internal citation and quotation marks omitted). Relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range "include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. (internal citations omitted).

In this case, the trial court aptly considered various factors that were not adequately reflected in the guidelines. At the outset, the trial court noted, "This [was] one of the most disturbing cases [it's] ever had." The trial court cited the biological relationship between the victims and defendant and their dependence on defendant for their care as factors that weighed in favor of departing from the sentencing guidelines. See *Milbourn*, 435 Mich at 660-661. The trial court then found that several scoring variables did not adequately reflect defendant's conduct.

PRV 7 accounts for the defendant's subsequent or concurrent felony convictions. MCL 777.57. Twenty points is appropriate under this variable when the "offender has 2 or more subsequent or concurrent convictions." MCL 777.57(1)(a). The trial court scored this variable at twenty points, but opined that the score did not adequately account for the substantial number of sexual abuse incidents in this case—approximately four or five incidents per week for several years. OV 4 addresses psychological injury to the victim. The trial court scored this variable at its maximum, but stated that the score did not adequately reflect that there were two victims in this case who were cognitively impaired and who suffered years of sexual abuse. The trial court also expressed its belief that OV 4 did not take into account the fact that BD observed defendant sexually abusing her sister. MCL 777.34.

OV 10 accounts for the defendant's exploitation of a vulnerable victim. MCL 777.40. Again, the trial court scored this variable at its maximum, but found that the score did not adequately reflect the extreme vulnerability of these victims, who were cognitively impaired and reliant on defendant for their care. OV 11 addresses criminal sexual penetration. MCL 777.41. Fifty points is appropriate under this variable when "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). The trial court scored this variable at 50 points, but found that the scoring of this variable did not adequately account for the substantial number of sexual abuse incidents in this case.

Defendant argues that the trial court did not properly consider his elderly age and his status as a disabled veteran. We disagree. The trial court did consider defendant's age and veteran status when sentencing him, but found that these factors did not warrant any leniency. In fact, the trial court addressed defendant directly and stated, "I find it disgusting that you [want to] hide behind your military career." We agree with the trial court that these factors are not mitigating. If anything, defendant's status as the elder guardian for these victims only exacerbated their trauma.

Defendant argues that the trial court did not articulate reasons for the extent of the upward departure from the sentencing guidelines range. Again, we disagree. As noted previously, the trial court articulated several considerations not adequately addressed by the sentencing guidelines. Perhaps most significantly, the trial court recognized that many sentencing variables account for the defendant's pattern of criminality. Yet, under these variables, the scale only extends to two episodes of impropriety. Here, the victims reported hundreds of episodes of sexual misconduct. Additionally, while several variables account for the harm caused to a vulnerable victim, here, defendant preyed on his cognitively impaired kin with whom he shared a bedroom for years, leaving them with no reasonable means to avoid the abuse. Overall, the trial court opined that defendant deserved at least twice the overall score calculated under the guidelines. The sentence it imposed was consistent with this opinion. Simply put, the trial court's explanation for its departure sentence is the exact type of well-reasoned analysis envisioned by the principle of proportionality.

We recognize that defendant's sentences are a substantial departure from the sentencing guidelines. Nonetheless, we cannot conclude that this departure was unjustified. We agree with the trial court that the sentencing guidelines did not reflect the seriousness of defendant's conduct. The trial court adequately explained the extent of its departure on the record and its sentence, though lengthy, captures the severity of the circumstances surrounding the offender and his offenses.

Affirmed.


/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Thomas C. Cameron