*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANEUDYS ANDRES QUEZADA,

Defendant-Appellant.

UNPUBLISHED
July 23, 2019

No. 342656
Kent Circuit Court
LC No. 17-005338-FC

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(2)(b) (sexual contact with a victim less than 13 years of age by a defendant 17 years of age or older). He was sentenced to serve 10 to 15 years' imprisonment for each count, to be served concurrently. On appeal, defendant argues that the trial court imposed a disproportionate sentence. For the reasons stated below, we affirm.

## I. BACKGROUND

Defendant's convictions were based on allegations that he sexually touched his niece, AG, and her cousin, JV. Defendant is AG's paternal uncle. Defendant began living with his brother's family in 2011 and moved out of the home when he and his sister-in-law (AG's mother) began having an affair. Defendant fathered a child with AG's mother in 2014. The evidence was that defendant regularly visited the home. During the visits, defendant would spend time with AG, AG's sister and JV, who came to the home after school. AG testified that defendant was nice to her and that she trusted him. She said that defendant would take her and the other children to Dollar Tree or McDonald's and buy them things. Testifying in 2018, AG and JV estimated that the abuse took place in 2016. AG and JV testified that defendant played "games" with them in an upstairs bedroom. AG explained that defendant played a game called "tickles," which at first involved "normal" tickling. But AG said that over time defendant began placing a blanket over her and tickling her "private parts" underneath her clothing. JV also testified that defendant touched her private parts after he covered her with a blanket. AG explained that sometimes defendant would touch her when they were alone in the bedroom with

-1-

the door locked. She said that defendant told her to wear shorts so that it would be easier to pull her pants off. AG also stated that defendant put his hands down her paints while in the car. AG claimed that defendant touched her private parts every time he visited. JV said that defendant touched her private parts "many times."

Defendant was convicted of one count of CSC-II against AG and one count of CSC-II against JV. The jury found defendant not guilty of a third count of CSC-II against AG's sister, and of two counts of first-degree CSC against AG and JV respectively.

## II. SENTENCING

Defendant's minimum sentence guidelines range was calculated at 36 to 71 months (3 years to 5 years and 11 months). The trial court gave the following explanation for departing from the guidelines range and imposing a 10-year minimum sentence:

> Mr. Quezada, you stand here for sentencing on two counts of criminal sexual conduct in the second degree involving a person under 13 when you were 17 years or older. Both counts carry a maximum potential penalty of 15 years in the Department of Corrections. The Department of Corrections calculated the guidelines in this matter, the sentencing guidelines at 36 to 71 months, and normally I do sentence within the guidelines. However, they are only advisory on the Court, and I think this is one of those unusual instances where there are compelling reasons to exceed the guidelines. And those compelling reasons in this particular case are where you're grooming the victims. They were family members. The girls testified that you brought them gifts, and that you took them out to McDonalds as a trusted family member and friend. And certainly, they did look up to you as both an uncle and a father figure.

> Further, I saw the girls testify, and they were certainly brave to come into court and testify in this situation, and I saw the youth. These were young girls.[1] And, obviously, your actions have a ripple effect, not only on the girls—and I agree that the girls are going to have psychological trauma that they're going to have to deal with for many years—but also on the entire family.

> Further, I think another compelling reason to exceed the guidelines is the fact that the girls testified that this happened over multiple months and many visits. And I think that was enabled by the fact that you also earned the trust of both of their mothers. They thought you were a family member and that you could be trusted with their children by yourself and that was untrue.

---

[1] At the time of trial, AG was 11 years old; JV was 10 years old.

III. ANALYSIS

Defendant argues that he received a disproportionate sentence because many of the reasons the trial court gave for the departure sentence were accounted for by the offense variables (OVs). We conclude that the imposed sentence does not constitute an abuse of discretion.

We review sentences that depart from the advisory guidelines range for reasonableness. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A sentence is reasonable if it adheres to the principle of proportionality, which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted). Court may consider various factors under the proportionality standard, including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. at 352-353 (quotation marks and citation omitted).]

The trial court must articulate reasons supporting its decision to impose a sentence outside the guidelines range. *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017). "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 475 (quotation marks and citation omitted).

"The first inquiry in our reasonableness review is whether there were circumstances that are not adequately embodied within the variables used to score the guidelines." *Steanhouse (On Remand)*, 322 Mich App at 239 (quotation marks and citation omitted). Defendant argues that his "grooming"[2] of the victims was taken into account by OV 10. OV 10 "is exploitation of a vulnerable victim." MCL 777.40(1). Defendant was assessed 10 points for OV 10 which is appropriate when the offender exploits "a victim's . . . youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). Defendant contends that grooming is simply one type of exploitation and is therefore always embodied by OV 10.

That position is inconsistent with our recent decision in *People v Lampe*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342325). In that CSC case, we concluded that the

---

[2] A police officer testified that "[g]rooming is the process in which a suspect gains the trust of a child for alternative purposes."

departure sentence was properly supported by the defendant's "grooming behavior" despite the fact that OV 10 was scored at 15 points for "predatory conduct."[3] *Id*. at ___; slip op at 12. We reasoned that "although OV 10 accounts to some degree for defendant's predatory conduct and grooming behavior, the trial court identified circumstances . . . that made his grooming of [the victim] particularly egregious." *Id*. Here, the trial court also identified factors that made defendant's exploitation of the victims particularly egregious. Defendant was a family member who regularly played with the children and bought them things in order to gain their trust and affection. Having established that trust, he used it to sexually assault AG and JV in the guise of playing "games" with them. And with respect to AG, many of the assaults occurred in her own home, which is normally a place of safety. The trial court did not err in considering those circumstances in sentencing defendant. See *id*.

Nor did the court err in considering the "ripple effect" that defendant's crimes had on the entire family. Defendant concedes that this factor was not accounted for by the OVs. Indeed, "[a]lthough OV 4 accounts for psychological injuries suffered by victims, it does not adequately consider the ways in which an offense affects familial relationships, nor does it always account for the unique psychological injuries suffered by individual victims." *People v Anderson*, 298 Mich App 178, 189; 825 NW2d 678 (2012) (citations omitted). In addition to being AG's uncle, defendant fathered a child with AG's mother. The court heard and received statements from several family members detailing the devastating effect of defendant's actions. The court reasonably took into account how defendant's multiple connections to the family made his crimes especially traumatic.

The last justification the trial court gave for the sentence was that defendant sexually assaulted the victims "over multiple months and many visits." Defendant argues that this fact was adequately accounted for by OV 13, which is scored for a "continuing pattern of criminal behavior." MCL 777.43(1). Defendant was scored 25 points for OV 3 because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Defendant contends that the phrase "3 *or more* crimes" accounts for the multiple assaults that the trial court found occurred. Under defendant's view, a pattern of three crimes against a person is no different than a pattern of 50 crimes for sentencing purposes. But he provides no authority that would allow us to impose such an absolute rule on sentencing courts. As stated, courts are to consider the seriousness and circumstances of the offense. Given its language, OV 3 takes into account more than three crimes and so the existence of other crimes will generally not serve as grounds to depart. However, in this case the number of assaults was so far beyond three that we conclude it was not fully encompassed by the scoring of OV 3.

Finally, defendant emphasizes the extent of the departure, a factor which we are to consider in reviewing a sentence for proportionality. See *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990). The trial court imposed a minimum sentence four years beyond the

---

[3] 15 points is assessed for OV 10 when "[p]redatory conduct was involved." MCL 777.40(1)(a). In *Lampe*, we upheld the assessment of 15 points for the defendant's grooming conduct. *Lampe*, ___ Mich App at ___; slip op at 5.

highest term in the relevant guideline grid.  But it gave several compelling reasons for its conclusion that a minimum sentence within the guidelines range would not have been proportionate to the seriousness and circumstances of defendant's offense.  As reviewed, there were several factors relevant to sentencing that were not fully encompassed by the sentencing guidelines.  Defendant misused his status as a close family member to repeatedly sexually abuse his young niece and her cousin over a period of months, traumatizing both the two victims and the extended family.  On the record before us, the trial court did not abuse its discretion in determining that a 10-year minimum sentence was reasonable.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro