*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREA LYNN PODBEVSEK,

        Defendant-Appellant.

UNPUBLISHED
July 6, 2023

No. 362017
Barry Circuit Court
LC No. 2021-000698-FH

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] her guilty plea convictions of operating while intoxicated causing serious injury (OWI), MCL 257.625(5)(a), and driving while license suspended causing serious injury (DWLS), MCL 257.904(5). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent sentences of 60 to 90 months' imprisonment for each conviction. We reverse and remand for resentencing.

## I. FACTUAL BACKGROUND

On June 18, 2021, defendant got into a car accident after taking too much of her prescribed medication, alprazolam, a generic form of Xanax. Alprazolam is a medication used to manage anxiety symptoms. An eyewitness filmed the incident. The video shows defendant weaving into oncoming traffic and hitting another car head on. The driver of the other vehicle was seriously injured. The driver's grandchildren, who were in the backseat at the time, sustained minor bruises.

A police officer who responded to the scene stated that he "smelled the odor of intoxicants" when he talked to defendant. The officer also reported to have observed that defendant had watery, bloodshot eyes and dilated pupils. Defendant was slurring her speech and was unable to walk

---

[1] *People v Podbevsek*, unpublished order of the Court of Appeals, entered September 15, 2022 (Docket No. 362017).

without stumbling. Defendant failed multiple sobriety tests, and was asked to submit to a preliminary breath test (PBT). Several PBTs were administered, and each time, the machine registered a .15 and then dropped to a .000. Defendant was taken to the hospital and had her blood drawn to test for intoxicants. The test results showed she had 246 ng/mL of alprazolam in her system.[2] The test did not reveal any evidence that defendant had ingested alcohol or other intoxicants. Defendant was charged with one count of OWI and one count of DWLS. She pleaded no contest to both charges.

Defendant's recommended minimum sentencing guidelines range was 5 to 28 months. The prosecutor requested that defendant be sentenced to 60 to 90 months' imprisonment instead. Defendant has a lengthy history of driving-related accidents, including an incident in which she hit a man on a bicycle with her car and fled the scene. For this she was convicted of failure to stop at the scene of an accident causing serious injury, MCL 257.617. She also has a number of prior misdemeanor DWLS convictions. The prosecutor explained that the sentencing guidelines did not account for defendant's long history of driving-related crimes. The prosecutor contended that defendant would likely continue to drive regardless of whether she had a license, as evidenced by her criminal record, and thus recommended that she be incarcerated.

The trial court agreed with the prosecution and sentenced defendant to concurrent terms of 60 to 90 months' imprisonment for each conviction. The trial court explained the rationale for the departure, stating:

> I'm going to note a couple things for the record. First of all, because there'll likely be an appeal on this case. Everything the Prosecutor said, all of the basis for his request for a prison sentence and then above the guidelines prison sentence, I'm adopting into my arguments here; my basis for a prison sentence.
>
> * * *
>
> This Defendant has absolutely no regard whatsoever for rules. Putting her on probation—she's been there before and hasn't learned. Taking away her license absolutely doesn't work. She has 8 or 10 driving with license suspended's [sic]. That won't prevent her from driving, at all. Her accidents—and it is—her sentence should be almost no different than if there were four dead people because they aren't dead because of anything she did, they aren't dead because she tried to help or save them, they're just dead by the grace of God—they're not dead by the grace of God.

---

[2] According to the Food and Drug Administration (FDA), blood plasma levels of alprazolam "are proportionate to the dose given; over the dose range of 0.5 to 3.0 mg, peak levels of 8.0 to 37 ng/mL were observed[,]" suggesting that at 246 ng/mL, the amount of alprazolam in defendant's system at the time of the accident was well outside the normal range. Food and Drug Administration, *Xanax Alprazolam Tablets, USP Fact Sheet*, available at <https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/018276s044,021434s006lbl.pdf>.

The first person, a few years ago, she ran over on a bike obviously had to know she did it, and she just leaves the scene. Doesn't even call 911 anonymously to say would you please help the person in the ditch that I might have just killed.

Put her on probation and it doesn't—it doesn't work. She gets—she's got help, she's gotten counseling and now she—she crashes into a grandpa with his six- and seven-year-old and the grandpa is hurt bad, multiple broken bones, has to have surgery, almost dies as a result of that. And is still—still injured.

The four objectives, first of all I have a right to go above the guidelines, they're not mandatory, they're advisory. I have the absolute right to go above them. The four objectives of sentencing are rehabilitation. We've tried that for years; it has not worked.

Incapacitation, yes, she needs to be incapacitated, taken off the streets so she does not kill someone. Deterrence, yes, we have to have prison occasionally to send a message to this person and others in the community that this is absolutely not acceptable. Absolutely not, and if you do it, you're gonna [sic] go to prison. That's what deterrent is.

And punishment, yeah this is serious. This is really really serious. There has to be a punishment and jail is not appropriate in this case. It is not significant enough.

The sentence needs to be proportionate to the crime viewed against the backdrop of the Defendant's criminal history. That's what the Court says. Clearly proportionate. This clearly could be more than a 60 to 90—90 month sentence, but it's not because of the grace of God because four people are still alive here in this case; 60 to 90 months, in many ways, is a gift here.

Defendant subsequently applied for leave to appeal to this Court, which was granted.

## II. ANALYSIS

Defendant argues that the trial court erred by imposing an unreasonable and disproportionate upward departure from her minimum sentencing guidelines range. We agree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "The standard of review when determining whether a departure sentence was reasonable is abuse of discretion." *People v Warner*, 339 Mich App 125, 153; 981 NW2d 733 (2021). "A trial court abuses its discretion when it applies a minimum sentence that violates the principle of proportionality, which occurs when the trial court 'fail[s] to provide adequate reasons for the extent of the departure sentence imposed . . . .' " *Id*. at 153-154, quoting *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). Consequently, the "key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472 (quotation marks and citation omitted). Additionally, this Court has expressed that relevant factors for determining whether a

departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [*People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).]

In determining an appropriate sentence, the sentencing court may also consider a defendant's misconduct while in custody, expressions of remorse, and potential for rehabilitation. *People v Barnes*, 332 Mich App 494, 505; 957 NW2d 62 (2020) (citation omitted).

The sentencing guidelines are advisory, not mandatory. *Lockridge*, 498 Mich at 399. However, "although the guidelines can no longer be mandatory, they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391. "[T]rial courts 'must consult those Guidelines and take them into account when sentencing.' " *Id*., quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). A sentencing court may depart from the sentencing guidelines without a substantial and compelling reason to do so, but must still "justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 391-392.

In this case, defendant's minimum sentencing guidelines range was 5 to 28 months. The trial court departed upward and sentenced defendant to 60 to 90 months' imprisonment. It appears that the trial court based its sentence on the fact that a worse set of circumstances, namely the death of four people, could have happened. This is, however, not what happened. Furthermore, the trial court noted that "[d]efendant has absolutely no regard whatsoever for rules," and that less restrictive punitive measures—probation, suspending defendant's license, and the like—had failed to curb defendant's reckless driving. The trial court contemplated the four traditional objectives of sentencing: rehabilitation, incapacitation, deterrence, and punishment. But the Court failed to explain why the sentencing guidelines, which take these factors into account, failed to offer a proportionate sentence. See *People v Daniel*, 462 Mich 1, 7 n 8; 609 NW2d 557 (2000). Moreover, the trial court decided that the sentence imposed was proportionate to the crime viewed against the backdrop of defendant's criminal history, a consideration accounted for in more than one of the prior record variables.

Further, at no point did the trial court explain why it chose to sentence defendant to a specific 60- to 90-month term of imprisonment rather than a lesser term of imprisonment, nor did it explain why the offense variables (OVs) and prior record variables (PRVs) failed to adequately capture the seriousness of the offense or the background of the offender. The trial court's decision to impose an upward departure sentence was clearly influenced by its concern about a hypothetical outcome rather than the facts of the case. The court's rationale was also strongly influenced by defendant's failure to benefit from past punishments that had been designed to rehabilitate instead of punish her. But the trial court failed to explain how or why the guidelines inadequately accounted for defendant's failure to benefit from rehabilitative programming, or how her behavior was somehow more egregious than that of any other repeat OWI offender. Accordingly, we conclude that resentencing is appropriate.

Furthermore, we are concerned that the trial court may have been misled by certain statements contained in the pre-sentence report. Under "Agent's Description of the Offense", there

-4-

is a notation that a police officer on the scene of the tragic accident giving rise to this conviction claimed to have "smelled the odor of intoxicants" on defendant when he spoke with her. This report was refuted by objective evidence. Blood testing definitively determined that the only intoxicant in defendant's system when the accident occurred was Xanax, an odorless prescription medication. "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88, 711 NW2d 44 (2006). Since a question exists as to whether the officer's recollection of events may have confused or tainted the trial court's perception of defendant's behavior in this case, we again reiterate that resentencing is proper in this case.

Ultimately, the trial court failed to articulate appropriate reasons for departing from the guidelines, and utterly failed to justify the extent of the departure sentence it imposed.[3] The court's discussion focused almost solely on what defendant might do in the future if sentenced to a less punitive term, as well as its disappointment over defendant's failure to benefit from past rehabilitative measures. At no point did the court explain why it believed that defendant's crimes were not adequately accounted for by the scoring of the guidelines. Because the court failed to address the reasons underlying the extent of the departure sentence it imposed, we conclude that it abused its discretion by sentencing defendant to 60 to 90 months' imprisonment. Defendant is entitled to resentencing.

Reversed and remanded for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[3] Defendant's prior record variable (PRV) score was 17 and her offense variable (OV) score was 45, placing her in the C-IV section of the applicable grid. Even if both her PRV and OV scores were maxed out, her minimum range would be 24 to 47 months—far below the sentence imposed.