*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CASEY STEPHEN TURNER,

        Defendant-Appellant.

UNPUBLISHED
February 1, 2024

No. 349691
Emmet Circuit Court
LC No. 19-004875-FH

## ON REMAND

Before: SHAPIRO, P.J., and M.J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of aggravated stalking, MCL 750.411i, and using a computer to commit a crime, MCL 752.796(1) and MCL 752.797(3)(d). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 46 months to 15 years in prison for each conviction, with the sentences to be served concurrently. On appeal, we affirmed defendant's convictions and the within-guidelines sentence. In lieu of granting leave to appeal, the Michigan Supreme Court vacated our decision to the extent it was inconsistent *People v Posey*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 162373), and remanded to us for reconsideration in light of that decision.[1] Having done so, we again affirm defendant's sentence.

## I. BACKGROUND

We[2] previously summarized the underlying facts of this case:

> Defendant rented an apartment and he and his girlfriend, the victim, were living there together when he was convicted of certain felonies and was sentenced

---

[1] *People v Turner*, ___ Mich ___; 997 NW2d 198 (2023) (Docket No. 162772).

[2] Judges M.J. KELLY and BOONSTRA have been substituted for Judges SAWYER and BECKERING in light of the latters' respective departures from this Court's bench.

to jail. Shortly before he was to be released from jail, his girlfriend told him that she was breaking up with him. She arranged for him to be moved out of the apartment. Defendant sought to convince her to reconcile. This led to him calling her and sending her numerous text messages, some of which included links to Netflix, YouTube, and other internet connections, which he was prohibited from accessing while on probation; defendant also accessed her Facebook account. She repeatedly asked defendant to stop contacting her but defendant claimed that while she did so, she also continued to contact him. She explained that her contacts involved outstanding issues such as having him pick up his remaining possessions and letting him know he had mail. On one occasion, after coming to the apartment to pick up a letter, defendant contacted the victim, accused her of cheating on him, and claimed to have found her sex toys. This caused her to believe that defendant had entered the apartment, which concerned her because defendant had surrendered his key and she had subsequently had the locks changed. However, he claimed that he had a key. The victim contacted the police. She also confirmed that her sex toys had been taken from a dresser drawer and removed from the apartment. [*People v Turner (Turner I)*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (349691), pp 1-2.]

Defendant was acquitted of second-degree home invasion, MCL 750.110a(3), and larceny in a building, MCL 750.360. As we explained in our prior opinion, the jury acquitted defendant of these charges, "presumably on the basis that defendant could not invade an apartment of which he was the lessee and that there was insufficient evidence that he entered the apartment or stole the items." *Id*. at 5. The aggravated stalking conviction was based on defendant violating a condition of his probation. See MCL 750.411i(2)(b). In the prior appeal, we rejected defendant's challenges to the sufficiency of the evidence to support the conviction:[3]

The testimony at trial established that defendant's order of probation provided that he was not to "violate any criminal law of any unit of government," or "engage in any assaultive, abusive, threatening or intimidating behavior," or "own or possess any computer or device capable of connecting to the internet . . . unless he obtained permission from his probation agent." Defendant violated a condition of probation by his repeated unconsented contacts with the victim, which constituted "abusive, threatening, or intimidating behavior." Also, he owned a "computer or device capable of connecting to the internet" because he owned and used a cell phone with which he apparently connected to the internet. Additionally, defendant's refusal to stop his repeated contacts, his apparent entry into the apartment after the locks were changed, and his contacts during which he accused her of cheating on him and called her a whore, were additional evidence that defendant had engaged in "abusive, threatening or intimidating behavior." [*Turner I*, unpub op at 8.]

---

[3] We also rejected defendant's argument that he was denied effective assistance of counsel. See *Turner I*, unpub op at 2-6.

We noted that "[w]hile the jury may have decided not to convict defendant of second-degree home invasion[,] . . . that did not mean that the victim was not threatened or intimidated by his apparent entry after she had the locks changed." *Id*. at 8 n 5.

Defendant also argued that his sentence was unreasonable. We first determined that defendant was barred from raising this claim, because this Court "has routinely affirmed sentences that are within the recommended minimum sentencing guidelines range" pursuant to 769.34(10), even following *Lockridge*.[4] *Turner I*, unpub op at 9. Setting that aside, we determined that defendant's challenge to his sentence lacked merit, reasoning that sentences in the guidelines range were presumptively proportionate to the seriousness of the crime, and defendant had not shown unusual circumstances to rebut this presumption.[5] See *id*.

In *Posey*, ___ Mich ___, the Supreme Court issued a plurality decision, with a majority of the Court agreeing that the first sentence of MCL 769.34(10) requiring affirmation of within-guidelines sentences is unconstitutional. This Court recently summarized the Supreme Court's decision in *Posey*:

> Supreme Court Justices BOLDEN, BERNSTEIN, CAVANAGH, and WELCH agreed that the opening sentence of MCL 769.34(10) is unconstitutional, although Justice WELCH offered a different constitutional analysi*s*. *Posey*, ___ Mich at ___ (BOLDEN, J.); slip op at 29-30, (CAVANAGH, J.); slip op at 1, and (WELCH, J.); slip op at 2. Furthermore, the latter three Justices agreed with Justice BOLDEN's pronouncements in her lead opinion that "within-guidelines sentences are to be reviewed for reasonableness," that reasonableness review requires a determination whether a sentence was proportionate, that there is a nonbinding presumption of proportionality, meaning that a within-guidelines sentence is not binding on the Court of Appeals, that "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate," and that "a within-guidelines sentence may indeed be disproportionate or unreasonable." *Id*. at ___ (BOLDEN, J.); slip op at 36, (CAVANAGH, J.); slip op at 1, and (WELCH, J.); slip op at 2. [*People v Posey (On Remand)*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 345491); slip op at 2.]

Defendant's application to the Supreme Court was held in abeyance pending the Court's decision in *Posey*.[6] The case now returns to us for review of defendant's sentence in accordance with the Supreme Court's plurality holdings.

---

[4] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

[5] We also rejected defendant's claim that he was sentenced on the basis of inaccurate information. See *Turner I*, unpub op at 9-10.

[6] *People v Turner*, ___ Mich ___; 964 NW2d 365 (2023) (Docket No. 162772).

## II. ANALYSIS

We conclude defendant fails to rebut the presumption that his within-guidelines sentence was proportionate.[7]

As noted, within-guidelines sentences are now reviewed for proportionality, with a rebuttable presumption that the sentences are proportional. See *Posey*, ___ Mich at ___ (BOLDEN, J.); slip op at 37-38 ("When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate. However, unlike a mandate that an appellate court affirm a within-guidelines sentence, the presumption of proportionality may be overcome."). Further, "challenges to within-guidelines sentences are reviewed for reasonableness according to the test outlined in [*People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017)]." *Posey*, ___ Mich at ___ (BOLDEN, J.); slip op at 4-5. "[T]he relevant question for appellate courts reviewing a sentence for reasonableness" is "whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Steanhouse*, 500 Mich at 471. The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted).

Defendant argues that the circumstances of the offense did not warrant a sentence at the top of the sentencing guidelines range, because the repeated text messages he sent to the victim were "the outpouring of emotions following a difficult breakup," and he did not threaten violence toward the victim. Defendant greatly minimizes his conduct and the effect of his repeated unwanted text messages on the victim. As we stated in our prior opinion, "[t]he victim testified that she was so disturbed by defendant's continuous contacts that she lost weight, had trouble eating, and broke out in hives," and "[d]efendant admitted that he continued to contact the victim despite her requests that he stop." *Turner I*, unpub op at 4. Further, defendant overlooks the significant mental distress caused by his apparent entry into the apartment after the victim changed the locks. In her victim-impact statement, the victim explained that she still does not feel safe staying at the apartment. Defendant's entry into the apartment was followed by text messages accusing the victim of lying to him and cheating on him, similar to previous messages in which he called the victim a whore. The trial court found that the victim suffered "serious and profound harm" because of defendant's actions. Thus, contrary to defendant's argument, the circumstances of the offense involved much more than an "outpouring of emotions." The fact that defendant did not threaten the victim with harm is not an unusual circumstance that would overcome the presumption of proportionality and render his within-guidelines sentence an abuse of discretion.

---

[7] "This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016) (quotation marks and citation omitted).

Regarding defendant's criminal history, defendant had two prior domestic violence cases against his ex-wife.[8] We previously affirmed the trial court's statement at sentencing that defendant had "issues of domestic violence." See *Turner I*, op at 10. Accordingly, we do not view defendant's conduct in this case as an isolated incident stemming from a difficult breakup.

In sum, considering the circumstances of the offense and the offender, defendant has not overcome the presumption that his within-guidelines sentence was proportional.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

---

[8] The first case was ultimately dismissed under the spouse abuse act, MCL 769.4a, and the second case resulted in defendant pleading to assault and battery.