*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAMARIUS MONTRAIL GREEN,

        Defendant-Appellant.

UNPUBLISHED
March 14, 2024

No. 345852
Genesee Circuit Court
LC No. 17-041898-FC

## ON REMAND

Before: SHAPIRO, P.J., and JANSEN and BORRELLO, JJ.

PER CURIAM.

This matter returns to us on remand from the Michigan Supreme Court. *People v Green*, ___ Mich ___; 997 NW2d 710 (2023) (*Green II*). Defendant was convicted by jury trial of second-degree murder, MCL 750.317; armed robbery, MCL 750.529; second-degree arson, MCL 750.73; fourth-degree arson, MCL 750.75; felon in possession of a firearm ("felon-in-possession"), MCL 750.224f; and four counts of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. *People v Green*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 345852), p 1, remanded in part and lv den in part, 997 NW2d 710 (2023) (*Green I*). He was sentenced as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 60 to 90 years for second-degree murder and 40 to 60 years each for armed robbery, arson, and felon-in-possession, to be served consecutively to four concurrent prison terms of two years each for the felony-firearm convictions. *Id*.

Defendant appealed his convictions on several grounds, none of which this Court found had merit, and his convictions were affirmed. *Id*. at 1-9. Defendant applied for leave to appeal in the Michigan Supreme Court, and for the first time raised the argument that his 60-year minimum sentence for second-degree murder, although within the statutory guidelines, was not proportionate.[1] Defendant's application was initially held in abeyance pending the decisions in

---

[1] Defendant does not challenge the sentences he received for his other convictions.

*People v Posey* (Docket No. 162373) and *People v Stewart* (Docket No. 162497), and once those cases were decided, the Supreme Court remanded the case to this Court "for consideration of whether the defendant's sentence is proportionate in light of" *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023) (*Posey II*), and denied leave to appeal in all other respects. *Green II*, ___ Mich at ___. We requested supplemental briefing from the parties limited to this issue. *People v Green*, unpublished order of the Court of Appeals, entered January 19, 2024 (Docket No. 345852).[2]

## I. BACKGROUND

The facts of this case were provided in full in the previous opinion of this Court:

> Defendant's convictions arise from the death of Michael Stringer and events surrounding Stringer's death. Stringer was last seen alive on the evening of December 4, 2016. In the early morning hours of December 5, 2016, a fire was reported at a house on West Downey Avenue in Mt. Morris Township, which belonged to the mother of codefendant Leonardo Johnson, Jr. The police found blood inside and outside the house, but did not find a body. At approximately 5:00 p.m. that evening, the police found a Chevy Cruze that had been burned and parked behind an abandoned house in Flint. The vehicle was towed away and stored at a secure impound lot. Later in December 2016, the police received information that Stringer had been driving a Chevy Cruze on the night he disappeared. After learning that an abandoned Chevy Cruze had been recovered earlier that month, the police located the vehicle at the impound lot and then found Stringer's deceased body inside the trunk.

> An autopsy revealed that Stringer died from multiple gunshot wounds. The prosecutor's theory at trial was that Stringer went to Johnson's mother's house intending to buy marijuana, that defendant and Johnson planned to rob him, and that Stringer was shot during the robbery. Afterward, defendant and Johnson placed Stringer's body in the trunk of his car and set the house on fire to cover up evidence of the shooting. Defendant and Johnson then went to the home of a mutual friend, Johnnisha Williams, where they changed their clothing and defendant showered, and then defendant drove Stringer's car, containing his body, to Flint, where it was left and set on fire. After these events, defendant fled the state.

> Defendant and Johnson were tried jointly, before separate juries. Midtrial, Johnson entered into a plea agreement whereby he pleaded guilty of a reduced charge of second-degree murder, agreed to a minimum sentence of 22-1/2 years, and also agreed to testify truthfully against defendant. At trial, Johnson testified that he arranged to meet with Stringer at his mother's house to sell him marijuana.

---

[2] We note that "[a] criminal defendant need not take any special steps to preserve the question of the proportionality of [his or] her sentence." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017) (quotation marks and citation omitted). Rather, "a defendant properly presents the issue for appeal by providing this Court a copy of the presentence investigation report," *People v Walden*, 319 Mich App 344, 350; 901 NW2d 142 (2017), which defendant has done.

Before Stringer arrived, defendant came to the house and the two then decided to rob Stringer. When Stringer arrived, Johnson met him outside while defendant waited in a bedroom. Johnson brought Stringer into another bedroom and told him to wait while Johnson went to the basement to get the marijuana. According to Johnson, while he was downstairs, he heard a gunshot. When Johnson returned upstairs, he saw that Stringer had been shot in the leg. Johnson claimed that defendant then shot Stringer three more times in the face, wrapped his body in some blankets, dragged it outside, and placed the body in the trunk of Stringer's car. Defendant then set the house on fire to destroy evidence of the shooting. Johnson admitted that the gun used to shoot Stringer belonged to him, but said that he allowed defendant to use it to commit the planned robbery.

According to Johnson, the two then drove to the home of Johnnisha Williams where defendant showered and they changed their clothing. At trial, Williams corroborated this testimony. Williams also testified that she noticed blood on defendant's shoes when he arrived. Johnson then borrowed Williams's car and followed defendant, who was driving Stringer's car, to an abandoned house in Flint, where they left Stringer's car and set it on fire. When the police later searched Stringer's car, they found a plastic bag with three sets of clothing. Photos recovered from defendant's and Johnson's Facebook accounts showed defendant wearing distinctive clothing that matched the clothing recovered from Stringer's car. Forensic analysis of a pair of pants recovered from Stringer's car also revealed the presence of DNA that matched defendant's DNA profile.

Defendant testified at trial and denied any involvement in the charged offenses. He could not remember what he did on December 5, 2016, but denied that he was at Johnson's mother's house. He remembered going to Williams's house with blood on his shoes and to shower, but claimed it was a different day, after he had attended a party. He also stated that he often swapped clothing with his friends, including Johnson, so it would not be unusual to find his DNA on clothing that Johnson wore.

After defendant was convicted, Johnson sent a letter to defendant's counsel, advising him that defendant was not involved in this offense and that Johnson committed it by himself. Defendant moved for a new trial on the basis of this newly discovered evidence. After conducting an evidentiary hearing at which Johnson and another witness testified, the trial court found that Johnson's recanting testimony was not credible, and accordingly, denied defendant's motion for a new trial. [*Green I*, unpub op at 1-3.]

## II. PROPORTIONALITY

Defendant now argues that although his sentence for second-degree murder was within the guidelines range, it was disproportionate and unreasonable because his age is a mitigating factor that the trial court did not consider, his conviction was based on the testimony of a noncredible witness—Johnson, and the court failed to justify the sentence it imposed. We disagree.

MCL 769.34(10) provides:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

Before *Posey II*, this Court held that, in light of MCL 769.34(10)—and despite *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015) (rendering the sentencing guidelines advisory rather than mandatory)—"[w]hen a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196 & n 1; 886 NW2d 173 (2016), overruled in part by *Posey II*, 512 Mich at 326.

In *Posey II*, the Supreme Court considered whether this interpretation renders MCL 769.34(10) unconstitutional, and the lead opinion held that "*Lockridge* require[d] that the portion of MCL 769.34(10) requiring affirmation of within-guidelines sentences on appeal be struck as unconstitutional." *Posey II*, 512 Mich at 349 (lead opinion by BOLDEN, J.).[3] In *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 345491) (*Posey III*); slip op at 2, this Court clarified that the Supreme Court declared the first sentence of MCL 769.34(10) unconstitutional, and that the following principles apply:

> within-guidelines sentences are to be reviewed for reasonableness, that reasonableness review requires a determination whether a sentence was proportionate, that there is a nonbinding presumption of proportionality, meaning that a within-guidelines sentence is not binding on the Court of Appeals, that the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate, and that a within-guidelines sentence may indeed be disproportionate or unreasonable. [Quotation marks and citations omitted.]

The *Posey III* Court also set forth the basic caselaw governing the reasonableness and proportionality inquiry as follows:

---

[3] Although no majority consensus was formed by the Supreme Court as to *why* the first sentence of MCL 769.34(10) is unconstitutional, the *Posey II* decision is a plurality decision, at least in part, and we choose to follow the lead opinion in the interests of judicial economy. See, e.g., *People v Scarborough*, 189 Mich App 341, 344; 471 NW2d 567 (1991).

In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), the Michigan Supreme Court observed:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

> "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. *Steanhouse*, 500 Mich at 472. The key test is whether the sentence is proportionate to the seriousness of the matter. *Id*. In regard to proportionality, the *Milbourn* Court "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). [*Posey III*, ___ Mich App at ___; slip op at 2-3.]

We now must consider whether the trial court abused its discretion in sentencing defendant to 60 to 90 years' imprisonment for second-degree murder in light of *Posey II*. According to the presentence investigation report, defendant's prior record variable score was 75 points, placing him in Level F, and his offense variable score was 115, placing him in Level III. The sentencing guidelines range was therefore calculated at 365 to 1200 months' imprisonment (or approximately 30 to 100 years). His minimum sentence of 60 years (720 months) therefore fell within the guidelines range, approximately in the middle.

At sentencing, the trial court began its pronouncement of defendant's sentence by stating that he was 22 years old at that time (in September 2018). Defendant was 20 years old at the time of the crime in 2016. Defendant was sentenced as a fourth habitual offender, and the trial court noted his juvenile record as well as the fact that he had absconded from a federal parole program at the time these crimes were committed. The court noted that he was unemployed, unmarried, obtained his general education diploma, and had no history of substance abuse. The court then noted the heinous nature of this crime, defendant having lured the victim to the residence for a drug deal, shot the victim while he begged for his life, set the house on fire to destroy evidence, and then hid the body in the trunk of a car. The court then rendered its' sentence for second-degree murder of 60 to 90 years' imprisonment.

Defendant first argues that his age was a mitigating factor that was not adequately considered at sentencing. Defendant cites *Miller v Alabama*, 567 US 460, 489; 132 S Ct 2455; 183 L Ed 2d 407 (2012), which held that sentencing individuals to mandatory life imprisonment without the possibility of parole for crimes committed before age 18 violated the Eighth Amendment ban on cruel and unusual punishment. See also *Jones v Mississippi*, 593 US 98, 114; 141 S Ct 1307; 209 L Ed 2d 390 (2021) (explaining that, "[f]aced with a convicted murderer who was *under 18* at the time of the offense and with defense arguments focused on the defendant's youth, it would be all but impossible for a sentencer to avoid considering that mitigating factor.") (emphasis added). Michigan has followed the trend in mitigating the harshest sentences for youth. See generally *Boykin*, 510 Mich at 178 (holding that trial courts must consider youth as a mitigating factor when sentencing juveniles specifically to a term-of-years sentence under MCL 769.25 or MCL 769.25a, the statutes enacted in response to *Miller*, but need not articulate on the record how a defendant's youth affected that decision). However, defendant was not 18 years old or younger at the time he committed these crimes in 2016. He was 20 years old, and admits in his supplemental brief that he was legally an adult, and that *Miller* drew the age boundary at 18. Defendant relies on studies indicating that the qualities of youth extend past age 18 and into the early twenties that has not yet been adopted by caselaw. Thus, the trial court did not abuse its discretion by not considering youth as a mitigating factor when sentencing defendant because he was over 18 years old at the time of the crime.

Next, defendant argues that his sentence for second-degree murder is not proportionate because his co-defendant, Johnson, submitted a statement posttrial indicating defendant did not take part in the murder, which the trial court did not consider at sentencing. Based on Johnson's statement, defendant moved for a new trial, an evidentiary hearing was held, and the trial court denied defendant's motion because Johnson's recanting testimony was not credible. *Green I*, unpub op at 1-2. This issue was addressed in this Court's previous opinion, wherein we upheld the trial court's finding and denial of defendant's motion. *Id*. at 5-8. As Johnson's statement was not made until after sentencing, it would not have been available at defendant's original sentencing hearing, and the trial court could not have abused its discretion in failing to consider it. Moreover, as it seems that the argument now raised sounds in the merits of the trial court's decision, which was already addressed on appeal, see *id*., or the sufficiency of the evidence, and this remand is limited to the issue of sentencing, *Green II*, ___ Mich at ___, we need not address it further.

Lastly, defendant argues the trial court failed to adequately justify defendant's sentence. As noted above, the trial court acknowledged defendant's age, his criminal history, his employment and education history, and the particular facts of the crime. Defendant was a fourth-offense habitual offender, and he had violated federal parole at the time he committed these crimes. As stated above, the Legislature intended the stiffest punishments against people who demonstrate an unwillingness to obey the law after previous encounters with the criminal justice system, and "everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *Posey III*, ___ Mich App at ___; slip op at 3 (quotation marks and citations omitted). Thus, the reasoning provided by the trial court was sufficient to establish that defendant's sentence was proportionate to the offense and the offender. Defendant has not met his burden to prove that his within-guidelines sentence was disproportionate or unreasonable, and the trial court did not abuse its discretion in sentencing defendant for second-degree murder.

Affirmed.

/s/ Kathleen Jansen
/s/ Stephen L. Borrello