*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 11, 2025
9:48 AM

Plaintiff-Appellee,

v

No. 371356
Dickinson Circuit Court
LC No. 2023-006254-FH

ADAM FOWLER MURRAY,

Defendant-Appellant.

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

Defendant, Adam Murray, appeals by leave granted[1] his plea-based convictions of attempted false report of terrorism, MCL 750.92 and 750.543m(1), two counts of use of a computer to commit a crime, MCL 752.796(1), and possession of methamphetamine, MCL 333.7403(2)(b)(*i*).[2] The trial court imposed an outside-the-guidelines sentence of 30 months to 5 years' imprisonment for the attempted false report of terrorism conviction, 30 months to 10 years' imprisonment for one count of using a computer to commit a crime, 30 months to 7 years' imprisonment for the second count of using a computer to commit a crime, and 2 to 10 years' imprisonment for the possession of methamphetamine conviction. On appeal, Murray argues that the outside-the-guidelines sentences were unreasonable and disproportionate. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Over the course of two days in April 2023, Murray sent a series of threatening text and video messages to two of his acquaintances via social media. In many of the messages, he expressed a desire to sexually assault babies and prepubescent children. He also named specific

---

[1] *People v Murray*, unpublished order of the Court of Appeals, entered October 1, 2024 (Docket No. 371356).

[2] As part of the plea agreement, the prosecution dismissed a charge of distributing child sexually-abusive material.

children whom he claimed he had already sexually assaulted. The messages were graphic and extremely disturbing. Murray also sent photographs of naked children in the messages. He threatened to murder and sexually assault his mother. Additionally, he threatened to shoot up an elementary school. In doing so, he expressed his admiration for school shooters and serial killers, and he also claimed that he had an automatic rifle and ammunition to carry out his threat. He repeatedly warned that he was not joking.

The two acquaintances promptly reported Murray to law enforcement. The school that he threatened to shoot up was placed in soft lockdown. Murray was arrested at his apartment. A search of his residence revealed both methamphetamine and a hard drive containing child sexually-abusive material and suspected child sexually-abusive material.

Pursuant to a plea agreement with the prosecution, Murray entered a no contest plea. Although his sentencing guidelines range was 0 to 11 months, as stated above, the trial court imposed an outside-the-guidelines sentence. This appeal by leave granted follows.

## II. PROPORTIONALITY OF SENTENCE

### A. STANDARD OF REVIEW

Murray asserts that his sentences are unreasonable and disproportionate to his circumstances and that the trial court did not adequately justify the extent of its departures from the recommended sentence guidelines range. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review for an abuse of discretion a challenge to the reasonableness of a sentence. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

### B. ANALYSIS

An outside-the-guidelines sentence is reasonable when it is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (quotation marks and citation omitted). When imposing an outside-the-guidelines sentence, a trial court can consider: "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight" *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). Although the sentencing guidelines are advisory, a trial court must take the applicable guidelines range into account when fashioning a defendant's sentence. *Lockridge*, 498 Mich at 392.

The court explained its sentencing decision as follows:

> I have carefully reviewed the facts as set-fourth [sic] in the Presentence Report and as I stated earlier, to say that they are disturbing, horrific, terrifying, is insufficient to describe what they are. They are, so disturbing, that the majority of them I would not even read on the public record. But you know what they are, Mr. Murray, and the only person that has to make redress for them, to this community, to yourself, is you. And, you have a ways to go in doing that. Because this may have been happening, you may have been committing these acts, sending these messages over a period of day [sic] to a day-in-half [sic]. The ripple affect [sic]

that it has had on this community, it has been over a year since it happened, and it will go on for years into the future as something that members of this community, students in that school that had the soft lockdown, their parents, felt, in light of everything that is going on in this country, to their very core, Mr. Murray. There are not many things that are as disturbing as a threat to one's child. And, that is what this was.

I am going to summarize, a little bit of what happened, to justify my decision in this case, for purposes of any Appellate Court that may look at this. But basically, starting on April 10 of 2023 at 5:52 p.m. and then continuing through the night and early into the morning, until there was a search warrant and an arrest. Through your messages on your computer or other electronic devices, you were communicating, let's just say, very sexually graphic, aggressive and violent statements of your intentions and strong desire to sexually assault children.

And, to take a gun to the, specific school that you mentioned, into the school and murder children. Your words, your text, your messages glorify school shooters. And, also made threats to sexually assault your own mother and to rape children.

And, what I am saying now is downplaying those messages. How harming children is a good thing to do. Sending photos of child pornography and encouraging the recipient of your messages to engage in similar behavior.

"I have plans to be a school shooter." "I worship serial killers." "I pray to Jeffrey Dahmer." Jeffrey Dahmer, the individual that ate a young boy. "I Honor the bound torture killer." "I believe that babies deserve to suffer."

And, it went on. And, I am reading the lighter of it. It may have been a blip in your life Mr. Murray, and I hope to God, that it is not any type of a pattern or a prediction for future behavior. And, I honestly, don't think it is. But it will not be a blip on the heartbeat of this community. It will not.

There are a lot of positives. Your Attorney has pointed them all out—many of them out, and I agree with all of them. The letters of support have been excellent. People that work with you, people that know you. An individual that I respect, immensely, Pastor Sullivan,[ ] who has written very highly of your progress and what you are doing to acknowledge your wrongs and change your future. So, I am taking all of that into consideration, and commend you for the work that you have started to do. But with your mental health history and your abuse history, this is going to be a long process for you, and a lot of hard work. You have zero priors, a high school degree, two years of college, support from your family, you're intelligent, your [sic] compassionate and you are resourceful. A lot of positives that I very infrequently see. So, I want to commend you for all of that. But as I just briefly outlined, we have got four felonies here that are all extremely serious.

\* \* \*

-3-

Also, disturbing are the items found in Mr. Murray's apartment, that were alluded to by the Prosecutor. I am taking those into consideration. They are indicated in the Police Report, and this would support the fact that this wasn't going on, the sexual behavior, and the shooting thoughts, were not going on just over this short period of a day, day-and-a-half. It was over a period of time that this evidence that was, in terms of the videos, the conversations, the shooting evidence, the CSC evidence, suspected, CSC evidence, the age difficult evidence, the methamphetamine; all of that was taken into possession by the police that night is taken under consideration in this sentencing.

Courts are allowed to exceed the guidelines. Guidelines are advisory. When the circumstances call for it. Circumstances call for it when the guideline range does not appropriately punish, rehabilitate the Defendant, protect society, and deter others. Sentence [sic] outside the guidelines range is appropriate when it is reasonable, and proportionate to the offense or offenses in question.

Based upon the continuing nature of the offenses. The serious nature of the offenses. The sexual nature of the offenses. The number of people that were threatened, including the entire community. The two specific victims that were receiving these messages. The controlled substances, many of these factors are not taken into consideration or are insufficiently taken into consideration in the guidelines that apply.

Having considered the foregoing, the court imposed an outside-the-guidelines sentence that exceed the guidelines by 19 months.

In challenging that sentence, Murray first claims that the trial court did not adequately consider mitigating factors, including his lack of criminal history, strong employment history, and letters of support indicating his good character. However, "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). In this case, the trial court expressly considered Murray's mitigating factors, but did not find—and was not required to find—that they weighed in favor of a lesser sentence.

Next, Murray declares that the trial court erred by considering dismissed conduct when fashioning his sentence. The trial court considered the "disturbing" child-sexually abusive material found in Murray's apartment, noting that such evidence suggested that Murray's "sexual behavior, and the shooting thoughts, were not going on just over this short period of a day . . . ." Although a sentencing court cannot rely on conduct for which a jury acquitted defendant, a court may consider uncharged conduct. *People v Beck*, 504 Mich 605, 626, 629; 939 NW2d 213 (2019). Given that Murray was not charged with or acquitted of possession of child-sexually abusive materials, such evidence amounted to uncharged conduct that the trial court had discretion to consider when fashioning a proportional sentence. As such, the trial court did not err by considering the evidence that was found at Murray's apartment.

Murray next contends that the trial court erred by using facts already considered by the sentencing guidelines to justify the outside-the-guidelines sentences. He directs this Court to prior

record variable (PRV) 7, which was assigned 20 points, for two or more concurrent felony convictions, MCL 777.57. Yet, the court was free to determine that the guidelines, as scored, were given inadequate weight and did not accurately reflect the seriousness of the crime. *Dixon-Bey*, 321 Mich App at 525. In this matter, the trial court found that the guidelines did not consider, or insufficiently considered, the serious nature of Murray's offenses. As the trial court noted, Murray communicated "very sexually graphic, aggressive and violent statements of [his] intentions and strong desire to sexually assault children." He threatened to murder and sexually assault his mother. And he vividly threatened "to take a gun to" an elementary school "and murder children." The court characterized Murray's threats as "disturbing, horrific, [and] terrifying . . . ." On this record, the court did not err by concluding that the disturbing content of the threatening messages justified a harsher sentence.

Finally, Murray argues the trial court improperly considered "[t]he number of people that were threatened" by his messages. OV 9 was assigned zero points for the number of victims, MCL 777.39. MCL 777.39(2)(a) defines a "victim[]" as "each person who was placed in danger of physical injury or loss of life or property . . . ." In *People v Carrigan*, 297 Mich App 513, 514-516; 824 NW2d 283 (2012), abrogated on other grounds by *People v Hardy*, 494 Mich 430; 835 NW2d 340 (2013), superseded by statute on other grounds as stated in *People v Rodriguez*, 327 Mich App 573; 935 NW2d 51 (2019), two students suffered property damage from defendant's malicious destruction of property. This Court held that each member of the school community did not qualify as a victim when scoring OV 9. *Id*. at 516. Under *Carrigan*, OV 9 could not account for the number of students and teachers at the elementary school who were threatened when Murray stated he would "shoot up" an elementary school with an automatic rifle. OV 9 did not account for the emotional trauma inflicted upon the students, the teachers, the parents, and the community of having an elementary school placed in lockdown in response to the school-shooting threat. On this record, the trial court did not abuse its discretion by considering the number of students and teachers who were threatened, as a "factor[] not considered by the guidelines. . . ." *Dixon-Bey*, 321 Mich App at 525 (citations omitted).

Given the record in this case, the trial court did not abuse its discretion by imposing an outside-the-guidelines sentence. Murray's sentence was proportionate to the seriousness of the circumstances surrounding the offense and the offender.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin